## B & P DEVELOPMENT

v.

## Ervin WALKER et al.

## CLEVETRUST REALTY INVESTORS

v.

## ERIE FLEXLUMESIGN CORP. et al.

### Civ. A. Nos. 76–28 Erie, 76–38 Erie.

United States District Court,
W. D. Pennsylvania.

Sept. 2, 1976.

---

Will Schaaf, Hugh McKnight, Corry, Pa., John Wingerter, Erie, Pa., for plaintiff.

Robert Spaeder, Warren Bentz, Erie, Pa., for defendant.

Eugene Brew, George Levin, Erie, Pa., for third-party defendant.

## MEMORANDUM AND ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

KNOX, District Judge.

Plaintiffs in these two cases challenge the constitutionality of the Pennsylvania Mechanics Lien Law, 49 Purdon's PS 1101, et seq. The constitutionality of this legislation, passed in 1963, has not been ruled

upon by any court in Pennsylvania with respect to the possible violations of the federal constitution.[1]

B & P Development, the plaintiff in Civil Action 76–28 erected a restaurant, a grocery store, and a two-family duplex residence in Corry, Pennsylvania. Clevetrust Realty Investors, the plaintiff in Civil Action 76–38 held a first mortgage on land in Edinboro, Pennsylvania which was leased to Edinboro Development, Inc. The latter corporation became insolvent while erecting commercial buildings on an eleven-acre property in Edinboro, Pennsylvania. The mortgage was then foreclosed and Clevetrust Realty Investors bought the property at a Sheriff's sale.

All of the property owned by the plaintiffs in these cases has been encumbered by mechanics lien claims asserted by the various individual and corporate defendants. These liens are the subject of pending litigation in the Court of Common Pleas of Erie County, Pennsylvania.

The issues involved in these cases are identical to those involved in the decision of a three judge court which upheld the constitutionality of the mechanics lien law of Arizona, *Spielman-Fond, Inc. v. Hanson's Inc.*, 379 F.Supp. 997 (D.Ariz.1973).[2] This decision was summarily affirmed by the Supreme Court. 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).[3] This court considers itself bound by the summary affirmance of Spielman and accordingly will uphold the constitutionality of the Pennsylvania Mechanics Lien Law. The court may dispose of these cases by denying motions for summary judgment filed by the plaintiffs and entering final judgments for defendants because the facts are not in dispute and only legal issues are involved. *Tomalewski v. State Farm Life Insurance Company*, 494 F.2d 882 (3d Cir. 1974).

The defendants in Spielman had secured mechanics liens on the plaintiffs' mobile home park and claimed that they were unpaid for labor and materials supplied to the project. The plaintiffs filed suit to enjoin the operation of the Arizona Mechanics Lien Law claiming as do the plaintiffs in these cases a violation of the due process of law guaranteed by the Fourteenth Amendment.

The Spielman three judge court evaluated the Arizona Mechanics Lien Law in the light of four recent Supreme Court decisions which dealt with the requirements of notice and hearing under the Fourteenth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) held that pre-judgment replevin statutes in Florida and Pennsylvania were unconstitutional in that chattels could be seized from the owner without any opportunity for a fair hearing. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) held that the imposition of court fees and costs in divorce proceedings was unconstitutional in light of the state's monopoly on divorce. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) held that welfare benefits may not constitutionally be terminated without a prior notice and hearing. *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) held that wages may not be garnished without a notice and a hearing.

The court held that the imposition of a mechanics lien did not involve a significant taking of property and therefore found that the due process standards of the above four cases did not apply to the Arizona Mechanics Lien Law.

"In *Sniadach* there was an actual taking of wages from the party. The effect of the Wisconsin garnishment statute was to

---

1. Pennsylvania has had a long series of mechanics lien statutes beginning as early as 1806. A number of these statutes were invalidated by the courts on the basis of the Pennsylvania constitution. This appears to be the first time that a mechanics lien statute in Pennsylvania has been challenged under the Federal Constitution.

2. There has been no request to convene a three judge court in this case pursuant to 28 U.S.C. §§ 2281, 2284 because no injunction is sought against a state official.

3. "May 28, 1974 appeal from U.S. District Ct. D. of Ariz. Judgment affirmed."

freeze the wager in the employer. Thus, funds to which the employee was entitled were kept from him. He was deprived of the actual possession and use of his wages. In *Goldberg* the termination of welfare benefits denied possession and use of the funds to the recipient. In *Fuentes* the chattels seized were physically taken from the parties. The instant case, by contrast, presents no actual taking of possession of any kind from plaintiffs. Indeed, the stipulated facts demonstrate that plaintiffs remain in continued possession of their land and continue to rent mobile home spaces to the tenants who are unaware of the lien claims. Thus, plaintiffs here have not been deprived of possession or use of their property as were the cases in *Snidach, Goldberg* and *Fuentes.*" 379 F.Supp. at 998, 999.

The court concluded that while a total prohibition on alienation of property may be unconstitutional, the partial prohibition effected by a mechanics lien does not necessitate the due process requirements of a notice and a hearing:

"All the cases [cited by the plaintiffs] involved direct and total prohibitions on the right to alienate. The prohibitions involved were such that, even if a seller could find a willing buyer, the statutory or contractual prohibitions involved prevented consummation of the transaction. That is a different situation from the case at bar. Here, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be amelio-

rated through the use of bonding or title insurance.

"We conclude, therefore, that the filing of a mechanics and materialmens lien does not amount to a taking of a significant property interest, and that, accordingly, ARS § 33–981 et seq. are not violative of due process of law under the Fourteenth Amendment for failing to provide for notice and hearing prior to the filing of the lien." 379 F.Supp. at 999.

A number of recent Supreme Court opinions have dealt with the precedential value of summary affirmances of District Court judgments by the Supreme Court. In *Fusari v. Steinberg,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), the court stated:

"When we summarily affirm without opinion the judgment of a three judge district court we affirm the judgment but not necessarily the reasoning by which it was reached.

"An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this court of doctrines previously announced in our opinions after full argument." 419 U.S. at 391, 95 S.Ct. at 541, 42 L.Ed.2d at 530.

A more detailed and instructive discussion of the significance of summary affirmances appears in *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The court notes that *Hicks* must be read with some caution because it involves a summary affirmance "for want of a substantial federal question" whereas *Fusari* and *Spielman* involve only summary affirmances. However, this distinction does not appear to be significant because all three cases involved appeals, by right, to the Supreme Court. *Fusari* and *Spielman* were appeals of three judge court rulings under 28 U.S.C. § 1253 whereas *Hicks* was an appeal under 28 U.S.C. § 1257(2) of a state court decision upholding a state statute against federal constitutional attack. The *Hicks* opinion makes it clear that summary affirmances of cases within the mandatory appeal jurisdiction of the Supreme Court

are necessarily decisions on the merits and are of much greater precedential value than are dismissals of certiorari petitions, granted at the discretion of the court.

The *Hicks* opinion makes the following observations about the precedential value of summary affirmances:

"We agree with appellants that the District Court was in error in holding that it could disregard the decision in *Miller II* [*Miller v. State of Cal.*, 418 U.S. 915, 94 S.Ct. 3206, 41 L.Ed.2d 1158]. That case was an appeal from a decision by a state court upholding a state statute against federal constitutional attack. A federal constitutional issue was properly presented, it was within our appellate jurisdiction under § 1257(2), and we had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought here under our certiorari jurisdiction. We were not obligated to grant the case plenary consideration, and we did not; but we were required to deal with its merits. We did so by concluding that the appeal should be dismissed because the constitutional challenge to the California statute was not a substantial one. The three judge court was not free to disregard this pronouncement. As Mr. Justice Brennan once observed 'votes to affirm summarily and to dismiss for want of substantial federal question, it hardly needs comment, are votes on the merits of the case . . . .' *Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 979 [3 L.Ed.2d 1200] (1959). . . . The District Court should have followed the Second Circuit's advice, first in *Port Authority Bondholders Protective Committee v. Port of New York Authority*, [2 Cir.], 387 F.2d 259, 262 n. 3 (1967), that '*unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the court has branded a question as unsubstantial it remains so except when doctrinal developments indicate otherwise,'* and later in *Doe v. Hodgson*, 478 F.2d 537, 539 (2 Cir. 1973), cert. den. 414 U.S. 1096 [94 S.Ct. 732, 38 L.Ed.2d 555] (1974), the lower courts are bound by summary decisions by this court 'until such time as the court informs [them] that [they] are not.' " 422 U.S. at 343, 95 S.Ct. at 2289, 45 L.Ed.2d at 236. (Emphasis added.)

See also *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 266 (1976), upholding a Philadelphia residency requirement for firemen on the basis of the summary affirmance of a case involving a similar Detroit law; *Wardwell v. Cincinnati Board of Education*, 529 F.2d 625 (6th Cir. 1976) and the decision of this court in *Piercy v. Heyison*, 76–41 Erie (June 16, 1976).

The court has carefully considered the implications of the above cases. Two possible situations seem to exist in which a lower court might feel free to disregard a summary decision of the Supreme Court. First, any significant differences in the facts of these cases from those of Spielman might free this court to reach an opposite conclusion. Accordingly, the court has painstakingly compared the Arizona Mechanics Lien Law with that of Pennsylvania. The court has concluded that the statutes are fundamentally similar and that the minor differences that do exist balance out—Pennsylvania provides more due process in certain areas while Arizona provides more due process in others.

The following provisions are illustrative of the nature of the differences in the two statutes. Anyone who furnishes labor or materials in Arizona can file a lien (ARS 33–981) but Pennsylvania only recognizes claims in excess of $500. (49 PS 1301) In Pennsylvania, a subcontractor must give 30 days notice of intent to file (49 PS 1501) while in Arizona neither contractors nor subcontractors need give notice. Arizona has shorter time limits both within which to file liens (Compare ARS 33–993 with 49 PS 1502) and within which to bring suit to enforce them. (Compare ARS 33–998 with 49 PS 1701), Arizona's liens must be filed under oath while this is not a requirement in Pennsylvania. (See ARS 33–993).

Finding no important differences between the Arizona and Pennsylvania stat-

utes, the only other possible escape from the holding in *Spielman* might arise from doctrinal changes in subsequent opinions of the Supreme Court. As pointed out in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), summary affirmances "are not of the same precedential value as would be an opinion of this Court treating the question on the merits." 415 U.S. at 671, 94 S.Ct. at 1359, 39 L.Ed.2d at 677.

The plaintiffs argue that a doctrinal change of the Supreme Court can be detected by comparing *North Georgia Finishing, Inc. v. Di-Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), decided about eight months after the *Spielman* affirmance with *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) decided 15 days before *Spielman*. As the Third Circuit recently pointed out in *Jonnet v. Dollar Savings Bank of the City of New York*, 530 F.2d 1123 (3d Cir. 1976), "The requiem for *Fuentes'* 'demise' [in *Mitchell*] soon appeared to have been chanted prematurely [in *Di-Chem*]." at p. 1127. *Mitchell* approved the Louisiana sequestration procedure while *Di-Chem* invalidated Georgia's procedure for the issuance of writs of garnishment by plaintiffs in pending litigation.

Analysis of the status of the *Fuentes* due process decision and its progeny after *Mitchell* and *Di-Chem* is not necessary for purposes of this opinion. It is clear that the court in *Di-Chem* felt that a significant taking of property was involved in the Georgia garnishment procedure.

"Here, a bank account, surely a form of property, was impounded and, absent a bond, put *totally beyond use* during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer." 419 U.S. at 606, 95 S.Ct. at 722, 42 L.Ed.2d at 757 (Emphasis added).

*Di-Chem* can thus be distinguished in the same manner as were the four Supreme Court cases cited by the three judge *Spielman* court—an actual deprivation of property is involved. *Di-Chem* does not constitute a subsequent doctrinal development by the Supreme Court in a full opinion which would cause this court to question the precedential value of *Spielman*.

For the above reasons, the court concludes that it is bound to follow the summary affirmance of *Spielman*. Three other federal courts have also relied on the precedential value of *Spielman* in recent cases. *In re Thomas A. Cary, Inc.*, 412 F.Supp. 667 (E.D.Va. May 7, 1976), upheld the Virginia Mechanics Lien Law. (See discussion of *Spielman* at pp. 670, 671). *Matter of Northwest Homes of Chehalis, Inc.*, 526 F.2d 505 (9th Cir. 1975), upheld the Washington pre-judgment attachment statute. (See discussion of *Spielman* at p. 506). *In re the Oronoka*, 393 F.Supp. 1311 (N.D.Me. 1975), upheld Maine's real estate attachment lien statute (See discussion of *Spielman* at pp. 1316, 17).

Finally, the court notes that this district determined one year before *Spielman* that an encumbrance of property without an actual taking does not invoke the Fourteenth Amendment guarantees of notice and an opportunity to be heard. In *Chittester v. L.C.–D.C.–F. Employees of G.E. Fed. Cr. Un.*, 384 F.Supp. 473 (W.D.Pa.1974) (Weber, J.), the court held that the mere entry of a judgment was "not a meaningful time in the due process history of judgment by confession." 384 F.Supp. at 479. It is evident that the Pennsylvania process of judgment by confession was upheld in *Chittester* on a basis similar to that by which this court today upholds the constitutionality of the Pennsylvania Mechanics Lien Law.

We therefore will deny plaintiff's motions for summary judgment. While defendants have not filed cross motions for summary judgment, nevertheless, since there are no questions of fact but only questions of law which have been decided in favor of defendants, the court will exercise its authority to enter final judgments for defendants. See Moore's Federal Practice 56.12, *Missouri-Pacific RR Co. v. National Milling Co.*, 409 F.2d 882 (3d Cir. 1969); Rule 54(c).