SERVICE PERSONNEL AND EMPLOYEES OF the DAIRY INDUSTRY, TEAMSTERS LOCAL UNION NO. 205, etc., et al.

v.

CARL COLTERYAHN DAIRY, INC.

Civ. A. No. 77–40.

United States District Court. W. D. Pennsylvania.

Aug. 24, 1977.

Herman Foreman, Pittsburgh, Pa., for plaintiffs.

Charles Volk, Pittsburgh, Pa., for defendant.

## MEMORANDUM DENYING MOTION TO VACATE ARBITRATOR'S OPINION AND AWARD

KNOX, District Judge.

This is an action brought under § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 to vacate an arbitrator's award. The movant, the Service Personnel and Employees of the Dairy Industry, Teamsters Local Union No. 205 (hereinafter the Union) filed a motion for summary judgment on February 28, 1977, based upon its original motion to vacate. The issue presented to the court is whether the arbitration award rendered in favor of the defendant, Carl Colteryahn Dairy, Inc., draws its "essence" from the

parties collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). For the reasons to be outlined below, the court concludes that the award does draw its essence from the contract and therefore the union's motion to vacate must be denied.

The dispute in this case arises out of defendant Carl Colteryahn Dairy, Inc.'s purchase of three twenty-foot wholesale route vehicles, allegedly in violation of the collective bargaining agreement. The agreement, effective from May 1, 1976 through May 1, 1978, contains the following provisions with respect to the maximum body size permitted for delivery route vehicles:

"The following maximum load limit shall be established in the distribution of milk, cream and fluid products in paper and plastic containers for wholesale milk routes operating under the commission system:

a. Wholesale—52,000 units per month regardless of the number of days in month.

The unit used in computing load limits shall be the quart or its equivalent. Four half pints equal one unit and two pints equal one unit, regardless of the fluid content of the container. Bulk products delivered in can dispensers of five (5) or more gallons, butter, eggs, cottage cheese and meats are excluded from compilation of load limits on both retail and wholesale trucks.

Any route on which paper or plastic containers are delivered shall be considered a paper route and operated under regulations governing paper.

Commission rates on glass and paper will govern each respectively, on routes where both types of containers are handled. Load limits on paper will prevail.

There shall be no load limits in the distribution of milk, ice cream or other products on wholesale routes operating on the hourly basis. *However, deliveries on hourly wholesale milk routes shall be made with vehicles whose maximum body length shall be 18 feet,* and further, no tractor-trailers will be used.

A report of the number of units delivered on each load each day of the month for each wholesale route on commission shall be prepared not later than the twentieth (20th) day of each subsequent month."

The background of the dispute has been fully summarized by Arbitrator Thomas McDermott in his opinion and award. Defendant Carl Colteryahn Dairy, Inc. has been a distributor of milk in the Pittsburgh market for over sixty years. The defendant is one of seven companies who are parties to the multi employer collective bargaining agreement now in effect with the union. Prior to October 1976 the company had been engaged in the wholesale delivery of milk and dairy products to stores and in retail distribution on a home delivery basis in the Pittsburgh market.

In July 1976, however, the company decided to abandon its retail operations and concentrate solely on servicing its wholesale accounts. In order to carry out this changeover defendant needed to obtain larger trucks for its straight wholesale routes and in August 1976 it purchased three used twenty-foot trucks from the Sealtest Company in Cleveland, Ohio.

The arbitrator notes that during negotiations before adoption of the bargaining agreement the employer group attempted to change Article VI, Section 2 to increase the maximum body length of wholesale route vehicles from 18 to 22 feet. The employers were not successful in including this change in the contract. Following negotiations, the employers again attempted to change the maximum length by raising the matter with the president of the union; he, in turn, took the issue to the union executive board, which denied the employer's proposal.

On October 13, 1976 a grievance was filed under Article VI, Section 2 by James Wirth, a trustee of the Union, objecting to the company's use of the twenty-foot trucks. Arbitrator McDermott denied the grievance holding that although the apparently unam-

biguous language of the contract sets a body length limit of 18 feet on hourly routes, the parties intent in this provision was to limit the size of loads that union drivers would be required to carry. Because the twenty-foot trucks in question had a smaller load capacity than the normal eighteen-foot trucks, the arbitrator ruled that the company's use of the twenty-foot trucks did not violate the contract.

The union urges that the arbitrator's award must be vacated because it allegedly ignores the clear and unambiguous language in Article VI, Section 2. In its brief and at oral argument the union argues that where the language of the contract is unambiguous, the arbitrator has no authority to consider the purpose or intent of the parties or the financial context of the dispute. Further, the union argues that the company is attempting to gain through arbitration what it could not gain in the negotiations, namely, an amendment to the contract to increase the maximum body size for hourly route vehicles. The company urges that the arbitrator's award be upheld.

After careful consideration of the briefs and arguments of the parties, the court concludes that the union's motion for summary judgment must be denied.

 Initially, we note that the court's role in reviewing a labor arbitration award is an extremely limited one. The court must determine whether the award draws its essence from the collective bargaining agreement. *Enterprise Wheel* supra. The court may not overrule the arbitrator's decision merely because it disagrees with his interpretation or construction of the contract:

"It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

 Judge Aldisert, speaking for the Third Circuit, outlined the standard for determining whether an arbitrator's award meets the "essence" test in *Ludwig Honold*

*Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969):

"Accordingly, we hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."

 Further, in making his award the arbitrator may go beyond the literal terms of the contract and consider the practices of the industry and the industrial common law—the law of the shop. *United Steelworkers of Amer. v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) *Signal Delivery Service v. General Teamsters,* 432 F.Supp. 1233 (W.D.Pa.1977) (Teitelbaum, J.).

 Applying these standards to the case at hand, the court finds that Arbitrator McDermott's award is rationally derived from the parties' collective bargaining agreement.

As noted above, the union argues that the arbitration award permitting the use of the twenty-foot trucks ignores the clear and unambiguous language of the contract. Where an award is issued in manifest disregard for the terms of the agreement, the court is bound to overrule it. *Signal Delivery,* supra.

Here, however, the arbitrator went beyond the literal language of the agreement and considered the purpose of the size limitation, the circumstances of the dispute, and the relative gains and losses flowing to each side from an award. The arbitrator determined that the purpose of the restriction was to limit the size of the loads that union drivers would be required to carry on hourly wholesale routes. He also noted that one of the aims of the agreement was to prevent any one employer from gaining a

competitive advantage in load limit capacity. Because the potential capacity of the twenty-foot trucks was less than the eighteen-foot truck capacity, the arbitrator found no possible competitive advantage accruing to the defendant. Also, the union drivers would not be required to carry loads larger than contemplated by the contract. Finally, the arbitrator considered the financial situation in the dairy industry and the difficulty in obtaining used delivery vehicles.

The arbitrator did not disregard the clear and specific language of Article VI, Section 2 but held that an application of the literal terms of the contract was not reasonable in light of the parties intent and circumstances of the dispute. Viewing the contract in light of the language, context and other indicia of the parties' intent, as provided by *Ludwig Honold,* supra, the court cannot find that the award has been issued in "manifest disregard" of the contract. Given that the parties have bargained for the arbitrator's interpretation of the contract it is not for this court to judge its reasonableness. The union's motion for summary judgment must be denied.

Defendant has not filed a cross motion for summary judgment. There are, however, no questions of fact remaining, only questions of law which have been decided in defendant's favor. The court will therefore exercise its authority to enter final judgment for defendant. See Moore's Federal Practice 56.12. *Missouri Pacific R. Co. v. National Milling Co.,* 409 F.2d 882 (3d Cir. 1969); *B&P Development v. Walker,* 420 F.Supp. 704 (W.D.Pa.1976); Rule 54(c).