TEAMSTERS' STEEL HAULERS LOCAL UNION NO. 800, Affiliated with the International Brotherhood of Teamsters, Plaintiff,

v.

The LAKESHORE MOTOR FREIGHT CO., Defendant.

TEAMSTERS' STEEL HAULERS LOCAL UNION NO. 800, Affiliated with the International Brotherhood of Teamsters, Plaintiff,

v.

ARTIM TRANSPORTATION SYSTEM, INC., Interstate Motor Freight Systems, Sentle Trucking Corp., J. Miller Express, Inc., Nick Strimbu, Inc., the Youngstown Cartage Company, John F. Scott Co., Al Zeffiro Transfer and Storage, Inc., Defendants.

Civ. A. Nos. 77–921, 77–1165.

United States District Court, W. D. Pennsylvania.

March 28, 1979.

On Reconsideration Aug. 15, 1979.

Herman L. Foreman, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., for plaintiff.

Thomas D. MacMullan, Lynn E. Wagner, Berkman, Ruslander, Pohl, Leiber & Engel, Allan L. Fluke, Wick, Vuono & LaVelle, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

The instant actions are consolidated cases under Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. Sec. 185, alleging breach of collective

bargaining agreements. Plaintiff, Teamsters' Steel Haulers Local Union No. 800 (hereafter called "plaintiff") and defendant carriers are signatories to agreements entitled the National Master Freight Agreement and Eastern Area Conference Iron and Steel Rider (hereafter referred to as "Agreement and Rider") which cover the terms and conditions of employment of drivers of leased and company-owned equipment. Defendants are alleged to have breached the agreement and rider by improperly deducting a 3.09 percent fuel surcharge from gross revenue before paying the drivers their wages, which is based upon a percentage of gross revenue (Agreement dated 7/1/73–3/31/76, Eastern Conference Rider, Article 52–Wages, Section 1; Agreement 4/1/76–3/31/79, Eastern Conference Rider, Article 53–Wages, Section 1).

Plaintiff filed grievances against defendants Strimbu, Interstate Systems, and Zeffiro on or about August 26, 1975 challenging the right of defendants to exclude the 3.09 percent fuel surcharge from the calculation of gross revenue. On or about October 9, 1975 the grievances were decided in favor of the defendant companies by the Western Pennsylvania Teamsters & Employers Joint Area Committee (hereafter referred to as "WPJAC").[1] Shortly thereafter, on approximately May 5, 1976, a similar grievance was filed by plaintiff against defendant Lakeshore Motor Freight. The Lakeshore grievance was unable to be resolved through the grievance procedure and culminated in a deadlock at the National Grievance Committee on September 22, 1976. The remaining defendants, Sentle Trucking, J. Miller Express, and John F. Scott, were the subject of grievances filed against all defendants on or about December 28, 1976. To date, no action has been taken on the December 28, 1976 grievances.

Dissatisfied with the attempts at resolution of the fuel surcharge problem via intra union procedures, plaintiff seeks to have this Court order the defendants to remit the deductions that they allegedly have been and are improperly deducting from the pay of drivers represented by the Union. Plaintiff further requests an injunction directing the defendant carriers to cease from making any further 3.09 percent deductions from gross revenue. Defendants Interstate Systems, Sentle, Strimbu, Zeffiro and Lakeshore, in addition to opposing plaintiff's request for relief in the case *sub judice* as have all defendants, seek attorney's fees and punitive damages through a counterclaim. The counterclaim contends that plaintiff is pursuing the instant action in bad faith inasmuch as the fuel surcharge problem now being litigated has been previously decided by the WPJAC in favor of the defendants. All of the aforementioned defendants have now moved for summary judgment and consequent dismissal of plaintiff's actions.

## STRIMBU, INTERSTATE SYSTEMS, AND ZEFFIRO

The motion for summary judgment on behalf of defendants Strimbu, Interstate Systems, and Zeffiro is laid upon a simple foundation. These defendants contend that the instant lawsuit is barred by the decision of the WPJAC in the *Strimbu* case which also acted as a favorable disposition of the grievances filed against defendants Interstate Systems and Zeffiro. The WPJAC held in the *Strimbu* case that:

". . . the Company will deduct 3.09% from the gross revenue and pay the company and fleet owner driver 26% of the balance."

The committee having concluded that deduction of the fuel surcharge from gross revenue prior to paying the drivers is permissible; it is contended that the same matter is barred from redetermination by the Agreement and Rider which provides:

"Where the Joint Area Committee, by a majority vote, settles a dispute, no appeal may be taken. Such a decision will be final and binding on both parties with no further appeal."

---

1. The decision itself was rendered in the case of *Local 800 v. Nick Strimbu Inc.* However, the parties had agreed that the *Strimbu* decision

would also be controlling on the *Interstate Systems* and *Zeffiro* cases due to the similarity of facts.

Whether or not the Agreement and Rider precludes this Court's review of the *Strimbu* decision depends upon whether the WPJAC determination draws its "essence" from the parties collective bargaining agreement. *United-Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). For the reasons which follow, this Court concludes the WPJAC decision of October 9, 1975 does not draw its essence from the Agreement and Rider and therefore the instant action, insofar as it is maintained against defendants Strimbu, Interstate Systems, and Zeffiro, is not foreclosed.

The calculation of wages in the Agreement and Rider is based upon a percentage of gross revenue:

> "Where a percentage method of pay is used, all drivers shall receive twenty-six percent (26%) of gross revenue as wages. . . ."

The contract percentage for compensation of drivers of leased or company-owned equipment is based upon gross revenue. If gross revenue increases, drivers of leased or company-owned equipment get their percentage of the increased revenue. If gross revenue decreases, drivers of leased or company-owned equipment get only their percentage of the decreased gross revenue. In spite of the apparent unambiguous intention that gross revenue be the benchmark by which wages are calculated, the WPJAC determined that drivers were to be paid only a percentage of the remainder of gross revenue minus the 3.09 percent fuel surcharge.

The "essence test" of *Enterprise Wheel and Car Corp., supra*, is as follows:

> "An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial jus-

tice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."

Even a cursory review of the Agreement and Rider reveals that the WPJAC decision does not draw its essence from the literal contract language. Yet, refusal to enforce the literal terms of the Agreement and Rider is not necessarily fatal to the WPJAC decision if other indicia of the parties' intention or purpose supports the Committee's interpretation. See, *General Teamsters, Chauffeurs and Helpers, Local Union No. 249 v. Potter-McCune Company*, 412 F.Supp. 8 (W.D.Pa.1976); *Service Personnel and Employees of the Dairy Industry, Teamsters Local Union No. 205, et al. v. Carl Colteryahn Dairy, Inc.*, 436 F.Supp. 341 (W.D.Pa.1977). In the case *sub judice*, however, there is no evidence whatsoever to indicate that the parties to the collective bargaining agreement ever contemplated equitable exclusions from gross revenue. While the WPJAC decision may have been based upon equitable considerations and may appeal to this Court's sense of equity, there is no basis in the Agreement and Rider and/or surrounding circumstances to conclude as did the WPJAC.[2] The parties having negotiated an agreement for the payment of drivers based upon a percentage of gross revenue, it is not within the authority of the WPJAC to rewrite the agreement merely to comply with its "own brand of industrial justice."

Accordingly, the Court holds that defendants Strimbu, Interstate Systems, and Zeffiro have been improperly deducting the 3.09 percent fuel surcharge from gross revenue and are ordered to make payment of past wages improperly withheld plus interest to their drivers so entitled and to cease deducting the fuel surcharge from gross

---

2. It is clear that the Interstate Commerce Commission by authorizing the 3.09 percent fuel surcharge did not intend to alter existing collective bargaining arrangements where wages were calculated as a percentage of gross revenue. Both the Chairman of the Interstate Commerce Commission and the District Director have taken the position that the defendant car-

riers have no authority to withhold the surcharge from gross revenue. While the Interstate Commerce Commission, in any event, is without power to unilaterally alter negotiated collective bargaining provisions, it is appropriate to note that the conduct of defendants is not even sanctioned by the creators of fuel surcharge itself.

revenue in the future. Defendants Strimbu, Interstate Systems, and Zeffiro's motions for summary judgment will be denied and summary judgment entered in favor of plaintiff. 6 Moore's FEDERAL PRACTICE ¶ 56.12; *Service Personnel, supra,* at 345.

## LAKESHORE MOTOR FREIGHT CO.

Plaintiff's grievance against defendant Lakeshore resulted in a deadlock at the National Grievance Committee, the last step in the grievance machinery. Plaintiff therefore has completely exhausted its internal attempts at resolution without success. Having so exhausted the contractually prescribed grievance procedures, the Court is empowered to address plaintiff's dispute with Lakeshore. Finding no difference in Lakeshore's conduct from that previously discussed, defendant Lakeshore's motion for summary judgment will be denied and summary judgment entered in favor of plaintiff against Lakeshore under the same terms and conditions as against Strimbu, Interstate Systems and Zeffiro.

## SENTLE TRUCKING, J. MILLER EXPRESS AND JOHN F. SCOTT

Plaintiff's action against defendants Sentle, J. Miller Express, and Scott reaches this Court in yet another procedural posture. There has been no exhaustion of the grievance procedure by plaintiff as to any of these three defendants. Although on or about December 28, 1976 grievances were filed against these three defendants as well as all other defendants, due to a misunderstanding among all parties involved the grievances were not placed upon the WPJAC agenda for hearing. As a result of the misunderstanding plaintiff challenged the surcharge in this Court in lieu of proceeding with its grievance. Utilization of the contractually established grievance procedure is a prerequisite to suit in this Court. Since the grievance procedure has not been

exhausted, this Court is without power to address the actions against Sentle Trucking, J. Miller Express or Scott. In view of the misunderstanding which aborted the initial grievances against these three defendants, this Court remands the plaintiff's dispute with them to the WPJAC for an expeditious hearing. The WPJAC is urged, however, to bear in mind this Court's viewpoints expressed today when considering its decision. Accordingly, defendant Sentle Trucking, J. Miller Express and Scott's motions for summary judgment will be granted and the dispute as to them ordered to proceed before the WPJAC.

## DAMAGES

Defendants Interstate Systems, Zeffiro, Strimbu, and Lakeshore must immediately cease deducting the 3.09 percent fuel surcharge from gross revenue and must additionally compensate their drivers for wages lost due to the use of such a method in the past. The Court is unaware of whether or not there is any dispute on the amounts so deducted. If the parties cannot agree on the amount of wages due and owing to the defendants' drivers within 30 days, a master will be appointed to set the amount. An appropriate Order will issue.[3]

## ON RECONSIDERATION

The instant actions are consolidated cases under Section 301 of the Labor Management Relations Act of 1947, as amended, *29 U.S.C. Sec. 185,* alleging breach of collective bargaining agreements. Plaintiff Teamsters' Steel Haulers Local Union No. 800 (hereafter called "plaintiff") and defendant carriers are signatories to agreements entitled the National Master Freight Agreement and Eastern Area Conference Iron and Steel Rider (hereafter referred to as "Agreement and Rider") which cover terms and conditions of employment of drivers of leased and company-owned equipment. De-

---

**3.** Inasmuch as the cornerstone of defendants Interstate Systems, Sentle, Strimbu, Zeffiro and Lakeshore's counterclaim is the bad faith pursuit of the instant litigation, this Court's holding that the 3.09 percent fuel surcharge

was in fact improperly deducted from gross revenue indicates that the case *sub judice* was brought for a proper and meritorious purpose. Accordingly, the aforementioned counterclaim will be dismissed.

fendants are alleged to have breached the agreement and rider by improperly deducting a 3.09 percent fuel surcharge from gross revenue before paying the drivers their wages, which is based upon a percentage of gross revenue.

Plaintiff filed grievances against defendants Strimbu, Interstate Systems, and Zeffiro on or about August 26, 1975 challenging the right of defendants to exclude the 3.09 percent fuel surcharge from the calculation of gross revenue. On or about October 9, 1975 the grievances were decided in favor of the defendant companies by the Western Pennsylvania Teamsters & Employers Joint Area Committee (hereafter referred to as "WPJAC"). Shortly thereafter, on approximately May 5, 1976, a similar grievance was filed by plaintiff against defendant Lakeshore Motor Freight. The Lakeshore grievance was unable to be resolved through the grievance procedure and culminated in a deadlock at the National Grievance Committee on September 22, 1976. The remaining defendants, Sentle Trucking, J. Miller Express, and John F. Scott, were the subject of grievances filed against all defendants on or about December 28, 1976. No action has ever been taken on the December 28, 1976 grievances.

All of the defendants moved for summary judgment. By Memorandum Opinion and Order dated March 28, 1979, this Court, finding the arbitration decisions to have been rendered in disregard of the essence of the collective bargaining agreements, entered summary judgment in favor of plaintiff and against defendants Interstate Motor Freight, Strimbu and Zeffiro. Finding the grievance procedures completely exhausted as to lakeshore, resulting in a deadlock, this Court also entered summary judgment in favor of plaintiff against Lakeshore. Lastly, finding grievances lodged against defendants Sentle, J. Miller Express and John F. Scott to have been inadvertently disregarded by the WPJAC, this Court remanded the grievances to the WPJAC for an expeditious hearing. On April 2, 1978, defendants Lakeshore, Interstate Motor Freight, Sentle, Strimbu and Zeffiro timely filed a petition for reconsideration shortly thereafter followed by a supplemental petition for reconsideration. As so filed, the petition and supplemental petition are presently ripe for disposition.

*PETITION FOR RECONSIDERATION*

■ The basis of the defendants' petition for reconsideration is that the instant actions are barred by the statute of limitations. Suits challenging arbitration decisions are subject to a three-month statute of limitations. *Siskey v. General Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 261*, 419 F.Supp. 48, 50 (W.D. Pa.1976); *International Brotherhood of Teamsters, Local Union No. 249 v. Motor Freight Express, Inc.*, 356 F.Supp. 724, 726 (W.D.Pa.1973). The action against defendants Strimbu, Interstate Systems, and Zeffiro was commenced on October 5, 1977, approximately two years after the WPJAC arbitration decision was rendered. Counsel for defendants Strimbu, Interstate Systems and Zeffiro, however, neglected to raise the bar of the statute of limitations in the motion for summary judgment resulting in the entry of summary judgment against defendants rather than for them. Attempting to rely upon the pleading of statute of limitations in their answer, defendants Strimbu, Interstate Systems, and Zeffiro seek reconsideration on that basis.

■ *Tomalewski v. State Farm Life Insurance Company*, 494 F.2d 882 (3d Cir. 1974) is authority for the proposition that defendants do not waive the statute of limitations defense where it is presented by the pleadings even if excluded from a summary judgment motion. Counsel for defendants should, however, be more careful in framing its future summary judgment motions. To offer numerous shallow reasons for summary judgment while a dispositive reason lies buried in the pleadings does not advance either the interests of justice or counsel's clients. In accordance with *Tomalewski*, this Court's previous entry of summary judgment against defendants Strimbu, Interstate Systems and Zeffiro will be vacat-

930

ed and summary judgment entered in favor of said defendants and against plaintiff for the reason that the actions against these three defendants were not timely filed.

 The action against defendant Lakeshore Motor Freight Co. was started by a complaint filed on August 8, 1977, almost a year after the September 22, 1976 deadlock at the National Grievance Committee. While the action against Lakeshore does not challenge an arbitration decision since there was none, this Court believes that the policy of early settlement of labor disputes underlying the relatively short three-month statute of limitations is no less important where grievance procedures have been completely exhausted to a stalemate. If anything, the policy underlying the statute of limitations becomes more important under these circumstances. Accordingly, summary judgment previously entered in favor of plaintiff and against Lakeshore will be vacated and summary judgment entered in favor of Lakeshore and against plaintiff for the reason that the suit was untimely filed.

Defendant Sentle is also a named movant in the petition for reconsideration. As indicated previously, arbitration concerning Sentle has never taken place. It is therefore premature to consider any allegation concerning the statute of limitations. In the same position as Sentle are non-movant defendants J. Miller Express and John F. Scott. Accordingly, defendant Sentle's request for reconsideration will be denied.

*SUPPLEMENTAL PETITION FOR RECONSIDERATION*

Insofar as the supplemental petition for reconsideration requests relief already granted upon the petition for reconsideration to defendants Interstate Motor Freight, Strimbu, Zeffiro and Lakeshore, it is denied as moot. Insofar as the supplemental petition for reconsideration requests relief on behalf of Sentle, the Court has considered its contentions and finds them to be without merit. Accordingly, the supplemental petition for reconsideration will be denied as to all moving defendants. An appropriate Order will issue.