**CHRYSLER CORPORATION, Appellant,**

v.

**FEDDERS CORPORATION, Salvatore Giordano, Sr., Salvatore Giordano, Jr., Bruno Giordano, Ignatius MacBrinn and Howard S. Modlin.**

No. 81–2128.

United States Court of Appeals,
Third Circuit.

Argued Sept. 23, 1981.

Decided Jan. 25, 1982.

Robert Ehrenbard (argued), Kelley Drye & Warren, New York City, Michael S. Meisel, Cole, Berman & Belsky, P.A., Rochelle Park, N. J., for appellant.

Milton B. Conford (argued), Robert J. Cirafesi, Wilentz, Goldman & Spitzer, Woodbridge, N. J., for appellees.

Before ADAMS, HUNTER and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Introduction

Before us is an appeal by plaintiff Chrysler Corporation from the district court's order holding unconstitutional the New Jersey lis pendens statute, N.J.Stat.Ann. § 2A:15–6 et seq., and granting defendants' motion to vacate a notice of lis pendens filed by Chrysler pursuant to that statute. As set forth hereafter, we will reverse the district court's order.

The underlying controversy arises out of Chrysler's agreement on February 23, 1976 to sell its Airtemp Division to defendant Fedders Corporation for $18 million cash, a promissory note of $10.5 million, delivery of 1.5 million shares of Fedders Series B preferred stock, and the assumption by Fedders of certain disclosed liabilities of Airtemp. Fedders, charging that the Airtemps assets had been overstated and its losses understated, suspended payment of interest on the promissory note and discontinued payment of dividends on the preferred

stock. Chrysler then initiated a series of lawsuits of which this is the seventh,[1] alleging that Fedders and several of its officers and directors, also named as defendants (jointly referred to as Fedders), engaged in a fraudulent conspiracy to acquire the assets of Airtemp without paying Chrysler the full agreed upon consideration.

In the instant complaint filed in the District of New Jersey on the basis of diversity of citizenship, Chrysler alleges, inter alia, that Fedders liquidated and converted the Airtemp assets into cash and used the cash to discharge mortgages and liens on property owned by Fedders in Edison, New Jersey. The complaint also alleges violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), in connection with securities transferred under the purchase agreement. Chrysler seeks compensatory damages in the amount of $85 million, punitive damages, and the imposition of either a constructive trust or an equitable lien upon the Edison property. Since the object of the action includes the enforcement of a lien upon New Jersey real property, Chrysler filed a notice of lis pendens pursuant to N.J. Stat. Ann. § 2A:15–6, which provides for the filing of such a notice in any action "the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumbrance thereon."

Fedders then moved to dismiss, transfer, or stay the action and to vacate the notice of lis pendens. The district court denied Fedders' motion in all respects but one; it granted that portion of the motion seeking to vacate the notice of lis pendens, and entered an order directing the clerk of Middlesex County, where the lis pendens notice had been filed, to discharge the notice. On July 14, 1981 this court granted Chrysler's motion for a stay of the district

---

1. Aspects of the litigation have given rise to the following decisions: Chrysler Corp. v. Fedders Corp., 643 F.2d 1229 (6th Cir. 1981), cert. denied, ─── U.S. ───, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981); Chrysler Corp. v. Airtemp Corp., 426 A.2d 845 (Del.Super.1980); Chrysler Corp. v. Fedders Corp., 51 N.Y.2d 953, 416 N.E.2d 1036, 435 N.Y.S.2d 700 (1980); Chrysler Corp. v. Fedders Corp., 76 A.D.2d 799, 429 N.Y.S.2d 340 (1980).

court's order and ordered an expedited appeal.[2]

In its opinion issued orally, the district court held that the lis pendens statute violated the Fourteenth Amendment by depriving Fedders of a constitutionally protected property right because the statute required neither a pre-filing hearing nor an effective post-filing hearing.[3] *Chrysler Corporation v. Fedders Corporation*, 519 F.Supp. 1252 (D.N.J.1981). In reaching this conclusion the district court found that there was a taking of "something of worth" from the defendant in that the filing of the notice of lis pendens "severely restricts the ability of the defendant in an action to convey realty affected by the notice because he or she cannot convey a title free from the plaintiff's claims." *Id.* at 1260. The district court, without discussion, referred to "the state action of the county clerk filing the notice of lis pendens." *Id.*

Having found state action resulting in a deprivation of property, the court applied the factors enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), to determine whether the procedures afforded defendants under the New Jersey lis pendens statute satisfied the demands of due process. The court found: (1) that those defendants, like Fedders, who have the "present intention of selling their realty" are "seriously affected by the filing of the lis pendens" because, given the length of time the land will be the subject of litigation, "it is unlikely that any purchaser can be found who would be willing to buy the property, even at a discounted price," 519 F.Supp. at 1262; (2) that the risk of erroneous deprivation is "great" because "even a meritless complaint could tie up the defendant's land for a significant period of time without any means of removing the lis pendens," *id.* at 1263; (3) that plaintiff also has an "important interest" which "may be significantly damaged" either because unique property may be conveyed or because it seeks to hold "whatever security it can in order to be fully compensated for its injuries," *id.* at 1262; and (4) that the lis pendens procedure protects significant governmental interests "by assuring courts of control over the subject matter of real property litigation," *id.*

**2.** The order of the district court vacating the notice of lis pendens on constitutional grounds is appealable under 28 U.S.C. § 1291 as a final collateral order. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). That doctrine is limited to "a 'small class' of orders which fit within the following definition of collateral orders: '[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" *Ray v. Robinson*, 640 F.2d 474, 476 (3d Cir. 1981) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374–75, 101 S.Ct. 669, 673–74, 66 L.Ed.2d 571 (1981)). In this case, the district court conclusively determined the issue of the constitutionality of the lis pendens provision; that issue is separate from the merits of the action in this case; and it is effectively unreviewable on final appeal. In determining whether an order is effectively unreviewable on appeal, we must "ascertain whether an important right will be lost, probably irreparably, if review must await a final judgment." *United States v. Levine*, 658 F.2d 113, 124–25 (3d Cir. 1981). *See United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978). The possibility that the realty which is the subject of the lis pendens notice could be sold by Fedders before conclusion of the action requires that a decision on the constitutionality of the provision must be made immediately if the rights asserted by Chrysler under the lis pendens statute are to have any practical or legal effect. Our decision on appealability is in accord with that reached by the Seventh Circuit in *Suess v. Stapp*, 407 F.2d 662, 663 (7th Cir. 1969), holding a similar order appealable.

**3.** Notice of the challenge to the New Jersey lawsuit was provided to the State of New Jersey by the district court which, on March 30, 1981, entered an order granting the Attorney General of the State of New Jersey leave to intervene to defend the constitutionality of the lis pendens statute, if he so chose. By letter dated April 24, 1981 the Attorney General responded that he declined to intervene at that time but reserved the right to intervene at a later point in the proceeding, including any appeals. Counsel for appellant advised this court at oral argument that the Attorney General was notified of the appeal and the argument. Transcript of argument, September 23, 1981 pp. 2–3. No motion to intervene in this court has been filed on behalf of the State of New Jersey.

at 1263. The court concluded that the lis pendens provision does not satisfy the requirements of due process because "it fails to make any meaningful accommodation for the legitimate interests of the defendant whose property is affected." *Id.* at 1264. The court noted, in particular, "the [statute's] failure to require the plaintiff to make even a minimal showing of entitlement to the rights created by the filing of the notice of lis pendens at a meaningful time either before or closely following the filing of the notice." *Id.*

On appeal, Chrysler presents three arguments. First, it urges that there is no deprivation of a property interest because a notice of lis pendens does not affect the owner's possession, use or enjoyment of real property, but merely prevents a seller from withholding the fact that there are adverse claims to the realty. In this connection, it argues that Fedders has no constitutionally protected right to alienate the property to a bona fide purchaser free of adverse claims. Second, Chrysler contends that there is no state action in this case because neither the existence of a state law authorizing the filing of a notice of lis pendens nor the fact that the notice is recorded by a ministerial official constitutes state action. Finally, Chrysler argues that even if Fedders has been deprived of a property interest, the procedures and protections afforded defendants under the lis pendens provision satisfy due process standards because the lis pendens provisions are fundamentally fair and represent an acceptable accommodation of the competing interests of the parties.

## II.

### The Doctrine of Lis Pendens

Under the common law doctrine of lis pendens, the mere filing of a law suit affecting property imparted constructive notice of the pendency of the suit; one who acquired the property from a party litigant while the suit was pending took the property subject to the outcome of the action,

despite having received no actual notice. *See, e.g., Haughwout & Pomeroy v. Murphy*, 22 N.J. Eq. 531, 544 (N.J.1871). The doctrine of lis pendens developed as a "doctrine of courts of equity, of ancient origin," [4] *id.*, because of the need to preserve the subject matter of the litigation so that the courts could render an effective final judgment. *See Wood v. Price*, 79 N.J. Eq. 620, 622, 81 A. 983, 984 (N.J.1911); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J.Super. 491, 496–97, 406 A.2d 1337, 1339–40 (Ch.Div.1979). The genesis of the doctrine has been described as follows:

At early common law the principle that a judgment was binding only upon parties to an action was considered to be axiomatic. When this rule was applied to actions which concerned the title or right to possession of specific property, however, the courts often found themselves in the position of rendering hollow judgments, the subject matter of the litigation having been conveyed to a non-participating party prior to the judgment. It was in response to this somewhat embarrassing situation that the doctrine of *lis pendens* developed. . . .

Note, *Does California's Statutory Lis Pendens Violate Procedural Due Process?*, 6 Pac. L.J. 62, 63 (1975) (hereafter referred to as Note, *California's Statutory Lis Pendens*) (quoting Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy*, 39 S.Cal.L.Rev. 108, 109 (1966)).

The hardship wrought by application of the common law doctrine of lis pendens is evident. As Professor Casner noted, "Great hardship often arose due to the inability of the purchaser to discover after reasonable search the existence of a suit affecting the title. Deeds in relation to the land were easily found in the title records provided by the recording acts, but the same was not true with respect to suits and actions." 3 A. J. Casner, *American Law of Property* § 13.12, at 521 (1952) (footnote omitted).

---

**4.** In *Mabee v. Mabee*, 85 N.J.Eq. 353, 357, 96 A. 495, 497 (Ch.1915), the court attributed the promulgation of the doctrine to Sir Francis Bacon in 1618, while he was Lord Keeper of the Great Seal.

In time, the state legislatures enacted statutes designed to ameliorate the harshness of the common law doctrine. In 1902, New Jersey adopted the predecessor of its current lis pendens statute. Its key feature is the provision that any person claiming an interest in the real estate described in the notice of lis pendens through any defendant in the action as to which the notice of lis pendens is filed "shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein as though he had been made a party thereto and duly served with process therein." N.J.Stat. Ann. § 2A:15–7. Further, until a notice of lis pendens is filed "no action, as to which such notice is required, shall ... be taken to be constructive notice to a bona fide purchaser or mortgagee of ... the affected real estate." N.J.Stat.Ann. § 2A:15–8.

The statute thus significantly alters the common law doctrine by providing a means for purchasers to obtain actual notice of the pendency of the suit. No longer can the mere filing of the lawsuit itself serve as constructive notice to potential purchasers who would take subject to the outcome of the action. See *Wood v. Price*, 79 *N.J.Eq.* at 622–23, 81 A. at 984; *Schwartz v. Grunwald*, 174 N.J.Super. 164, 168, 415 A.2d 1203, 1205 (Ch.Div.1980); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J.Super. at 496, 406 A.2d at 1339. As at common law, however, once the notice of lis pendens is filed, a purchaser of the property takes the property subject to the outcome of the litigation. The filing of a notice of lis pendens "acts as constructive notice to all the world of the pendency of an action involving real property and that a purchaser of that property takes subject to the outcome of the litigation." *Wendy's of South Jersey*, 170 N.J. Super. at 496, 406 A.2d at 1339.

Under the New Jersey statute, which is set out in full in the Appendix to this opinion, a notice of lis pendens shall be filed in every action instituted in a New Jersey state court or in a federal court sitting in New Jersey if the object of the action "is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumbrance thereon." N.J.Stat.Ann. § 2A:15–6. This provision was recently construed in *Polk v. Schwartz*, 166 N.J.Super. 292, 298, 399 A.2d 1001, 1004 (App.Div.1979), to mean that the lis pendens statute was applicable where plaintiffs sought the imposition of a constructive trust on property because they alleged that it was acquired by defendants with assets fraudulently acquired from plaintiffs. The court stated, in a case similar to that under consideration here, "[T]here is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of *lis pendens* may be filed under a statute such as ours." *Id.*

The notice of lis pendens must identify the action and describe the affected real estate. N.J.Stat.Ann. § 2A:15–6. It can be filed only after the filing of the complaint,[5] and must be filed in the "office of the county clerk or register of deeds and mortgages ... of the county in which the affected real estate is situate." Id. Once the notice is filed, the county clerk or register of deeds and mortgages is required to record the notice in a book kept for that purpose and to keep the record book properly indexed and available for examination by interested persons. N.J.Stat.Ann. § 2A:15–12.

The notice of lis pendens can be discharged in several ways: (1) it is discharged automatically after three years from the date of its filing, N.J.Stat.Ann. § 2A:15–11; (2) it may be discharged by order of the court wherein the action is pending if the plaintiff fails to prosecute the action "diligently" or "for other good cause shown,"

---

5. The filing of a complaint is an absolute prerequisite to the filing of the notice of lis pendens. *See, e.g., Schwartz v. Grunwald*, 174 N.J.Super. 164, 171–74, 415 A.2d 1203, 1207–08 (Ch.Div.1980) (notice of lis pendens filed by defendant prior to filing of the counterclaim ineffective); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J.Super. 491, 497, 406 A.2d 1337, 1340 (Ch.Div.1979) ("the notice [of lis pendens] has no existence apart from a judicial proceeding since an action must be pending for the notice to be filed").

N.J.Stat.Ann. § 2A:15–10; (3) defendant can effect a discharge by giving "such sufficient security as the court having jurisdiction of the action shall direct" where the claim is for the payment of money, N.J. Stat.Ann. § 2A:15–15; (4) if a final judgment is made in favor of the defendant-property owner, the county clerk or register of deeds and mortgages is required to record the substance of the judgment which acts as a discharge "unless the plaintiff takes an appeal . . . and files a similar notice of lis pendens . . . stating in the notice the object of the appeal or proceedings," N.J.Stat.Ann. § 2A:15–14; (5) the county clerk or register of deeds and mortgages follows a similar procedure upon notification that a judgment made in the action is paid, satisfied or performed, or that the action has been settled by the parties or has been abandoned by the plaintiff. N.J.Stat. Ann. § 2A:15–17.

## III.

### Constitutional Issues

If Chrysler prevails as to any of its three arguments, *i.e.*, that lis pendens does not constitute deprivation of property, that there is inadequate state action to invoke the Fourteenth Amendment, or that the procedures and safeguards provided are adequate to satisfy the requirements of procedural due process, the decision of the district court invalidating the lis pendens statute must be reversed. Each of Chrysler's three arguments is a constitutional one. Fedders concedes that under the New Jersey interpretation of its own lis pendens statute in *Polk v. Schwartz, supra,* the statute encompasses the kind of claim asserted by Chrysler in this action and on which the notice of lis pendens was predicated. Thus, we cannot avoid making a constitutional interpretation by seeking a statutory basis for our decision. However, even when a constitutional decision is required, we have been cautioned that constitutional pronouncements should not be rendered in broader terms than required. *See Rescue Army v. Municipal Court,* 331 U.S. 549, 569, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947).

That advice is particularly instructive in this case because, as noted below, resolution of the first of these issues would require significant extension of existing precedent, and the panel is divided on the state action issue. Thus, we decide this case on the ground that the lis pendens procedure does not violate due process. In light of the district court's holding, it is necessary to address all three issues.

A. *Whether the Lis Pendens Constitutes a "Taking."*

■ It is elementary that procedural due process is necessitated only if there has been a taking or deprivation of a protected interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the principal cases from which the law governing procedures which must be accorded to debtors has evolved, the "taking" which resulted from the prejudgment creditor remedy was evident. The debtor was totally and actually dispossessed of the possession, use and enjoyment of property. For example, in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the prejudgment garnishment procedure enabled a creditor to freeze half of the wages of a debtor in the hands of an employer pending the outcome of the litigation on the creditor's claim. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the prejudgment replevin procedure allowed a creditor to replevy consumer household goods in which the creditor held a security interest. In *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the prejudgment garnishment statute allowed the bank account of a debtor to be impounded and put beyond the debtor's use during the pendency of the litigation. *See also Finberg v. Sullivan,* 634 F.2d 50 (3d Cir. 1980) (en banc) (post-judgment attachment and freezing of bank account); *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123 (3d Cir. 1976) (Pennsylvania foreign attachment procedures). In contrast to the deprivation which occurred in those cases, under the lis pendens provision at issue here defendant maintains full

possession and use of its property. Furthermore, as Chrysler points out, defendant is not prevented from alienating its property.

On the other hand, there is evidence in the record which establishes that a lis pendens impairs the marketability of the property by depriving the owner of the ability to convey clear title while the litigation is pending. Fedders filed an affidavit of a title expert who stated that during the pendency of a filed lis pendens, a title insurance company would not issue a title commitment on a property and a title examiner would not certify the marketability or insurability of the property without an exception for the lis pendens claim. There is some support in both logic and precedent for Fedders' contention that a taking need not involve an actual physical taking of the property. It argues that a deprivation takes place when the free use and enjoyment of the property is affected and that, as in the case of the Edison property, when real property has been acquired for and is being held for resale the most beneficial use of the property lies in its marketability. Therefore it argues, and the district court agreed, that restrictions which practically prevent the free alienation of the property should be considered a taking.

Language in the creditor remedies cases suggests that the need for procedural due process may be triggered by something less than a total deprivation of property. Thus in *Fuentes* the Court stated that, "[a]ny significant taking of property by the State is within the purview of the Due Process Clause." 407 U.S. at 86, 92 S.Ct. at 1997. Justice Harlan in his concurring opinion in *Sniadach* also remarked that "[s]ince this deprivation cannot be characterized as *de minimis*, [the debtor] must be accorded the usual requisites of procedural due process." 395 U.S. at 342, 89 S.Ct. at 1823.

There is a line of cases involving non-possessory prejudgment real estate attachments in which courts have viewed the impairment of both marketability and mortgageability as a deprivation of a significant property interest within the protection of the Fourteenth Amendment. *See Terranova v. Avco Financial Services of Barre, Inc.*, 396 F.Supp. 1402 (D.Vt.1975) (three-judge court); *Bay State Harness Horse Racing & Breeding Association v. PPG Industries, Inc.*, 365 F.Supp. 1299 (D.Mass.1973) (three-judge court); *Gunter v. Merchants Warren National Bank*, 360 F.Supp. 1085 (D.Me. 1973) (three-judge court); *Clement v. Four North State Street Corp.*, 360 F.Supp. 933 (D.N.H.1973) (three-judge court). *But see In re Northwest Homes of Chehalis, Inc.*, 526 F.2d 505 (9th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976); *In re The Oronoka*, 393 F.Supp. 1311 (D.Me.1975). The reasoning of these cases may be equally applicable to a notice of lis pendens. While a lis pendens does not effect the same degree of deprivation as replevin or garnishment and leaves the owner with some attributes of ownership of the property, it nonetheless operates to restrict the owner's full enjoyment of the property in a significant respect. Since the owner's ability to sell the property is concededly diminished, and a sale may be the principal aim of the owner, a court writing on a blank slate might agree with the district court's conclusion that the lis pendens procedure effects a sufficient taking to warrant due process analysis. We note that the Supreme Court of Connecticut in invalidating Connecticut's lis pendens procedures has reached a similar conclusion. *Kukanskis v. Griffith*, 180 Conn. 501, 430 A.2d 21 (1980).

As on most constitutional issues, however, we do not write on a blank slate. In *Spielman-Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973) (per curiam), *summarily aff'd*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), a three-judge district court held that the filing of mechanic's and materialmen's liens pursuant to Arizona statutes does not amount to a taking of a significant property interest and therefore the statutes do not violate the Fourteenth Amendment by failing to provide for notice and hearing prior to filing the lien. The *Spielman-Fond* court held that although the effect of the lien would make the owner's ability to alienate the property freely more

difficult, because the owners remained in continued physical possession of the property against which the liens were filed, they had not been deprived of actual possession or use of their property as were the debtors in *Sniadach* or *Fuentes.* The court stated that although the effect of a lien is to cloud the title to the property and hamper marketability, the right to alienate the property still existed:

> If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance.

*Id.* at 999.

Chrysler argues that the holding in *Spielman-Fond* is dispositive of the taking issue in this case. It correctly points out that a summary affirmance is a disposition on the merits that is binding on the lower courts. *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). However, as we have recently noted, "under *Mandel [v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977)] and *Illinois State Board [of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)], the precedential value of a summary disposition by the Supreme Court is to be confined to the exact facts of the case and to the precise question posed in the jurisdictional statement." *Lecates v. Justice of the Peace Court No. 4,* 637 F.2d 898, 904 (3d Cir. 1980).

It is manifest that *Spielman-Fond* compels a holding that the filing of a mechanic's or materialmen's lien does not amount to a taking of property, and the federal courts that have considered this issue since the Supreme Court action have so held. *See, e.g., B & P Development v. Walker,* 420 F.Supp. 704 (W.D.Pa.1976); *In re Thomas A. Cary, Inc.,* 412 F.Supp. 667 (E.D. Va.1976), *aff'd without opinion,* 562 F.2d 48 (4th Cir. 1977). *But see Barry Properties, Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 353 A.2d 222 (1976) (construing both the state and federal constitutions); *Roundhouse Construction Corp. v. Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778 (1975), *vacated,* 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975) (remanded to consider whether judgment based upon federal or state grounds), *aff'd on remand,* 170 Conn. 155, 365 A.2d 393 (1976) (holding that prior decision invalidating Connecticut mechanic's lien statute was based upon both state and federal constitutional grounds and reaffirming prior decision), *cert. denied,* 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (adequate state ground). A recent indication that the Supreme Court's affirmance in *Spielman-Fond* has not been undercut by its intervening decisions is given by the Supreme Court's action on the decision of a New York court in *Carl A. Morse, Inc. v. Rentar Industrial Development Corp.,* 56 A.D.2d 30, 391 N.Y.S.2d 425 (1977), *aff'd on opinion below* 44 N.Y.2d 952, 404 N.Y.S.2d 343, 375 N.E.2d 409 (N.Y.1978), upholding New York's mechanic's lien law on the ground that the filing of a mechanic's lien does not result in the deprivation of any significant property interest and that the procedural safeguards incorporated into the statute " '[effect] a constitutional accommodation of the conflicting interests of the [several] parties.' " 56 A.D.2d 30, 391 N.Y. S.2d at 430 (quoting *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974)). The Supreme Court's dismissal of *Morse* for want of a substantial federal question, 439 U.S. 804, (1978), is considered to be on the merits and binding. *Hicks v. Miranda,* 422 U.S. 332 at 344–45, 95 S.Ct. 2281 at 2289, 45 L.Ed.2d 223.

The rationale of *Spielman-Fond* has been applied beyond the mechanic's lien setting by courts considering non-possessory real estate attachments. Thus, in *In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976), the Ninth

Circuit used *Spielman-Fond* to uphold Washington's non-possessory real estate attachment statute on the ground that the notice of attachment does "nothing more than impinge upon economic interests of the property owner." 526 F.2d at 506 (quoting *Spielman-Fond*, 379 F.Supp. at 999). *Accord, In re The Oronoka*, 393 F.Supp. 1311, 1317 (D.Me.1975). This court has also remarked, in dictum, that a statute which permits a municipality to create a lien by filing a claim without a pre-filing hearing is distinguishable from those at issue in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), where the state remedies provided for the deprivation of use of debtor property by a pre-hearing seizure. In *Winpenny v. Krotow*, 574 F.2d 176, 177 (3d Cir. 1978), we stated that "[u]nder the [Pennsylvania] Municipal Claims and Tax Liens Act the filing of the claim does not affect the alleged debtor's use of the property, and no interference with that use can take place until the municipality resorts to a judicial foreclosure."

We recognize that the majority of those courts that have considered the constitutionality of similar lis pendens provisions have upheld the statutes on the ground that the filing of a notice of lis pendens does not result in a significant taking of property. *See Batey v. Digirolamo*, 418 F.Supp. 695 (D.Hawaii 1976); *George v. Oakhurst Realty, Inc.*, 414 A.2d 471 (R.I.1980); *Empfield v. Superior Court*, 33 Cal.App.3d 105, 108 Cal.Rptr. 375 (1973). *See also Debral Realty, Inc. v. DiChiara*, 420 N.E.2d 343 (Mass. 1981). The issue is indeed a close one, and Judge Hunter in his concurring opinion makes a highly tenable case for our adoption of a similar position.

However, we should be cautious about extending the *Spielman-Fond* holding beyond the scope of the precise facts encompassed there for several reasons. In the first place, there is a significant distinction between the situation in which a mechanic's lien is filed and that where a lis pendens is filed. It may be possible to view the restriction on alienability caused by a mechanic's lien, as Fedders argues, as one consented to by the debtor. Certainly it may be viewed as one bargained for between the parties. The labor or materials which are the subject of the lien have presumably enhanced the value of the property. In return, the property owner was aware that nonpayment would subject it to a mechanic's lien, but also that any claim must be filed and suit begun within a limited period of time after the provision of the work or materials. Thus different equities and considerations inhere in the mechanic's lien situation. *See* Note, *California's Statutory Lis Pendens*, 6 Pac.L.J. at 67. At least one court, when considering a non-possessory personalty attachment statute, has held that because there has been a "pre-existing property right or relationship" in the case of a mechanic's lien which "gives the creditor special rights and a special interest in the particular property at issue," *Spielman-Fond* is inapplicable. *Briere v. Agway, Inc.*, 425 F.Supp. 654, 661 (D.Vt.1977) (three-judge court).

Secondly, without the benefit of the reasoning on which the Supreme Court relied in its summary affirmance in *Spielman-Fond*, it is difficult to determine whether the same considerations are equally applicable in the lis pendens situation. There may be situations in which it would be unrealistic to view a property right as unitary and indivisible, so that a taking or deprivation in the constitutional sense would occur only if the owner is deprived of all of its attributes. In another context, Justice Rehnquist wrote that a "property interest is not a monolithic, abstract concept hovering in the legal stratosphere." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 160 n.10, 98 S.Ct. 1729, 1735 n.10, 56 L.Ed.2d 185 (1978). A holding that lis pendens does not entail a taking might impart too narrow a scope to the protection afforded by the Fourteenth Amendment. In light of our ultimate disposition in this case, it is consistent with our obligation of restraint in making constitutional holdings to decide merely that the degree of deprivation caused by a filing of a

notice of lis pendens warrants reaching the due process issue.[6]

### B. Whether There Is "State Action."

A determination of whether the district court erred in holding there is sufficient state involvement with the lis pendens procedure to be characterized as "state action" for purposes of the Fourteenth Amendment entails a similarly close question of constitutional interpretation, one on which the panel is divided. Chrysler relies on *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), as the principal support of its contention that the New Jersey lis pendens procedure does not amount to the state action necessary to implicate procedural due process guarantees. In *Flagg Bros.*, the Supreme Court held that a warehouseman's sale of goods authorized under the New York Commercial Code was not action properly attributable to the state of New York. The Court considered and rejected the two bases on which the Court of Appeals had relied in finding state action: "New York's statutory delegation of distinctly governmental power to the warehouseman" and "its corresponding expansion of his common law remedies." See 553 F.2d 764, 771 (2d Cir. 1977).

Considering first the public-function doctrine cases, which held the conduct of elections by local political organizations and performance of all the necessary municipal functions by the owner of a company town were public functions, the *Flagg Bros.* Court held that the state's "system of rights and remedies, recognizing the traditional place of private arrangements in ordering relationships in the commercial world, can hardly be said to have delegated to Flagg

Brothers an exclusive prerogative of the sovereign." 436 U.S. at 160, 98 S.Ct. at 1735 (footnote omitted). The Court noted that the settlement of disputes between debtors and creditors is not traditionally an exclusive public function, *id.* at 161, 98 S.Ct. at 1736, and remarked that even if it "were inclined to extend the sovereign-function doctrine outside of its presently confined bounds, the field of private commercial transactions would be a particularly inappropriate area into which to expand it." *Id.* at 163, 98 S.Ct. at 1737.

Turning next to the second basis on which the debtors relied for their claim of state action, the State's authorization and encouragement of the warehouseman's action by enacting § 7–210 of the Commercial Code, the Court held that the mere acquiescence in a private action does not convert that action into that of the State. *Id.* at 164, 98 S.Ct. at 1737. It was "immaterial that the State has embodied its decision not to act in statutory form", *id.* at 165, 98 S.Ct. at 1738, and the "mere denial of judicial relief" to the debtor was insufficient "encouragement to make the State responsible for ... private acts...." *Id.*

Chrysler argues that the same analysis which resulted in finding an absence of state action by a warehouseman's sale of a debtor's goods requires a similar finding in the claimant's filing of a lis pendens. My reading of *Flagg Bros.* leads to a contrary conclusion. The underlying factual premise upon which the *Flagg Bros.* decision is based, and which distinguishes it significantly from this case, is the "total absence of overt official involvement." *Id.* at 157, 98 S.Ct. at 1734. No state official performed any function in the procedure by

**6.** Chrysler argues that the doctrine of lis pendens is a substantive law regulating dealings in property which "defines and determines the metes and bounds of a bundle of property rights" and therefore is not a procedural taking of property implicating Fourteenth Amendment procedural due process. In support of this contention, it notes that Rule 64 of the Federal Rules of Civil Procedure relating to prejudgment confiscatory procedural remedies does not refer to lis pendens. The Advisory Committee Note on the Rule states: "No rule concerning lis pendens is stated, for this would

appear to be a matter of substantive law affecting State laws of property." Several courts have held that lis pendens is a substantive state law which must be applied by the federal courts. *United States v. Calcasieu Timber Co.*, 236 F. 196 (5th Cir. 1916); *United States v. Chicago, M. & St. P. Ry.*, 172 F. 271 (C.C.D. Minn.1909). In view of our disposition on other grounds, we do not consider whether denominating lis pendens as part of the substantive state law means that the procedural protections of the Fourteenth Amendment are inapplicable.

which Flagg Bros. effected its control over the debtor's property. The importance of the "total absence of overt official involvement" was stressed several times by the Court. It was the basis on which the Court distinguished that case from its earlier decisions imposing procedural restrictions on creditors remedies, such as *North Georgia Finishing, Fuentes, and Sniadach. Id.* The Court stated that, "In each of those cases *a government official participated in the physical deprivation* of what had concededly been the constitutional plaintiff's property under state law before the deprivation occurred." *Id.* at 161 n.10, 98 S.Ct. at 1736 n.10 (emphasis added). While Justice Stevens, in his dissenting opinion on behalf of three Justices, decried the Court's action in basing its state-action doctrine on "purely ministerial acts of 'minor governmental functionaries'", *id.* at 173–74, 98 S.Ct. at 1742, it is apparent that the majority made no other effort or attempt to distinguish the prior creditor remedies cases where state action had been conceded.

Accordingly, we are bound to compare the involvement of a state official in the New Jersey lis pendens procedure with the involvement of state officials in the earlier Supreme Court creditor remedies cases. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), entailed the most active involvement by a state official. There, the writ of replevin was issued by the clerk of the court and executed by the sheriff who actually seized the goods which were the subject of the writ of replevin. The sheriff held the property for three days, during which the debtor could reclaim possession by posting a security bond. If the bond was not posted, the property was transferred to the creditor who sought the writ, pending a final judgment in the underlying repossession action. Clearly, the state official's involvement in the lis pendens procedure is not comparable. *See also Finberg v. Sullivan,* 634 F.2d 50 (3d Cir. 1980) (en banc). On the other hand, under the garnishment procedure at issue in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the clerk of the court issued a summons of

garnishment at the request of the creditor's lawyer. The service of the summons by the lawyer on the garnishee, the debtor's employer, then set in motion the machinery whereby the wages of the employee-debtor were frozen in the hands of the employer pending the outcome of the litigation. In *North Georgia Finishing v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the clerk of the court, based on an affidavit of the creditor, issued a summons of garnishment to the garnishee-bank pursuant to which the bank account of the debtor was impounded by the bank.

Under the New Jersey lis pendens procedure, the state official has a number of statutory functions. Not only is the notice of lis pendens filed in the office of the county clerk (clerk) or register of deed and mortgages (register), but, significantly, the clerk or register is required to record the notice in a book kept for that purpose and to keep the record book properly indexed and available for examination by interested persons. N.J.Stat.Ann. §§ 2A:15–6, 2A:15–12. Furthermore, the clerk or register must record in the record book the final judgment or any settlement or satisfaction, which acts as a discharge. N.J.Stat.Ann. §§ 2A:15–14, 2A:15–17. Unlike the warehouseman's remedy in *Flagg Bros.,* it is the filing of the notice of lis pendens in a state office and recording by a state official in an official book kept for that purpose which effects the remedy which is the subject of the constitutional challenge. *See Flagg Bros.,* 436 U.S. at 161 n.10, 98 S.Ct. at 1736 n.10. Whether or not one views these acts of the state official as merely ministerial, they cannot be distinguished in any meaningful way from the acts of the state officials in either *Sniadach* or *North Georgia Finishing.*

Chrysler also attempts to find support for its view that there is no state action in this court's divided en banc decision in *Parks v. "Mr. Ford",* 556 F.2d 132 (3d Cir. 1977), but that case is distinguishable on the same basis as *Flagg Bros.* In *Parks v. "Mr. Ford",* we considered whether there was state action with respect to the exercise by

a garageman of Pennsylvania's common-law possessory lien and the subsequent sale by the garageman pursuant to Pennsylvania statute. We considered the issues separately. The analysis applied by the majority in holding that there was no state action in the exercise of the possessory lien anticipated that adopted a year later by the Supreme Court in *Flagg Bros.* We rejected the contention that the state had "significantly involved itself with the private party" by virtue of its common law under which the garageman could exercise its possessory lien, *id.* at 136–37, and we held that such action did not involve a public function because "we simply are not satisfied that a garageman exercises a power traditionally reserved exclusively for the sovereign when he refuses to release his customer's vehicle until he is paid." *Id.* at 139. We stated, however, "In fact, state officials did not even perform ministerial functions in connection with the defendants' retention of the plaintiffs' vehicles," and compared *North Georgia Finishing* and its predecessor cases. *Id.* at 136.

It is unlikely that our holding on the second issue in *Parks v. "Mr. Ford"*, that the state statute which authorized sales to take place, directed how they are to be carried out, and gave them the effect of judicial sales constituted state action, *id.* at 141, survives *Flagg Bros.*, but that issue need not be decided here, because a holding that there is state action in the lis pendens procedure would be based on different grounds than those on which we relied in *Parks v. "Mr. Ford"*. Thus, neither of the principal cases on which Chrysler relies, *Flagg Bros.* and *Parks v. "Mr. Ford"*, is helpful to its position.

7. In *Gibbs v. Titelman*, 502 F.2d 1107, 1113 (3d Cir.), *cert. denied*, 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974), we stated that "private repossessions are not infused with 'state action' merely because a state issues a certificate of ownership to the secured party enabling it to transfer the automobile to a third party purchaser at a sale following repossession" (footnote omitted) and in *Parks v. "Mr. Ford"*, 556 F.2d 132, 141 (3d Cir. 1977) (en banc), we stated in dictum, "we do not rely at all upon the fact that state employees . . . issue a certifi-

It is somewhat curious that most of the cases which have considered the constitutionality of lis pendens provisions do not address the state action issue. Those courts which have found that the lis pendens procedures deny due process assume, without discussion, that state action is involved. *See Kukanskis v. Griffith*, 180 Conn. 501, 430 A.2d 21 (1980); *Lake Tulloch Corp. v. Dingman*, No. WEC–27140 (Cal.Super. June 1, 1973), *petition for writ of mandate denied sub nom. Dingman v. Superior Court*, No. 2 CIV 42438 (Cal.Ct.App. July 17, 1973).

Although the district court found there was state action, we cannot affirm that holding. Judge Hunter would hold there is no state action, and Judge Adams does not reach the issue. I am candidly uncomfortable with an approach which hinges a finding of state action on what appears to be the somewhat superficial factor of involvement by a state official rather than on a more reasoned approach which takes into account state interests and state policy, but I believe that we are compelled to this result by the Supreme Court's decisions.[7]

C. *Whether the procedure under the New Jersey lis pendens statute complies with due process.*

 The Supreme Court has emphasized that " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Rather, " 'due process' is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

cate of title for the vehicle in the garageman's name. . . . [W]e adhere to our holding in *Gibbs* that this minor involvement by state officials is not sufficient to transform essentially private transactions into state action." As discussed in the text, the subsequent *Flagg Bros.* decision rationalizes the state action finding in the prior creditor remedies cases on the involvement of state officials. Furthermore, there is somewhat more involvement of a state official in the lis pendens procedure than in the procedures at issue in our two prior cases.

In *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), the Court articulated the following framework for analyzing what procedural safeguards are required by due process:

> [R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

(citations omitted).

In the context of creditors remedies, the Court has characterized the necessary inquiry to be whether the statute effected "a constitutional accommodation of the conflicting interests of the parties." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974). *In Finberg v. Sullivan*, we summarized the holdings of the Supreme Court's creditor remedies cases as follows:

> The principles established in the controlling Supreme Court decisions, to summarize, are that notice and an opportunity to be heard before an attachment are not absolutely necessary. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. *The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor.*

634 F.2d at 58 (emphasis added).

In light of the above precedents, we must at the outset consider the competing interests, both public and private, at stake here.

As the district court correctly noted, the effect on the defendant property owner of filing a notice of lis pendens "varies considerably depending upon the defendant's plans with respect to the realty." 519 F.Supp. at 1262. As we noted in Part A above, the property owner does not suffer at all in either its possession or use of the property. Thus, the filing of the notice of lis pendens does not affect those defendants who have no intention of alienating or mortgaging the property. Only those defendants who desire to sell their property are affected because the practical effect of the filing of the notice of lis pendens may be to prevent alienability or at least to hinder it. Thus, in weighing the defendant's interest, some consideration must be given to the fact that the deprivation caused by a notice of lis pendens is less than total. Furthermore, it is unlikely that the deprivation causes the acute suffering of a deprivation of "money required for the basic expenditures of living," which was at issue in *Finberg*, 634 F.2d at 59, or of the household goods or wages which were at issue in *Fuentes* and *Sniadach* respectively. We do not intimate that deprivation of a corporation's assets is not an injury worthy of protection. Indeed, in *North Georgia Finishing* the taking involved the freezing of a corporation's bank account. We only note that when the extent of the deprivation is considered, both in scope and in kind, it is less severe than that at issue in many of the other creditor remedies cases. *See* Note, *Lis Pendens and Procedural Due Process*, 1 Pepperdine L.Rev. 433, 440 (1974).

In considering the plaintiff's interest, filing of the notice of lis pendens ensures that plaintiff's claim is not defeated by a prejudgment transfer of the property. As to some claims, such as those by a plaintiff seeking specific performance of an agreement for the sale of real property, uniqueness of the land makes this type of security particularly necessary. Even when the claim merely involves tracing the funds to the purchase of the property, or, as alleged in this case, to clear encumbrances, the lis

pendens provides security for the ultimate payment of the claim.

Nor is the state of New Jersey without a valid interest in the procedure it has established for the filing of a notice of lis pendens. If the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, *pendente lite*, to a purchaser without notice, additional litigation would be spawned and the public's confidence in the judicial process could be undermined. *See* Note, *California's Statutory Lis Pendens*, 6 Pac.L.J. at 76. The state, in enacting the lis pendens statute, was concerned that the rights of third parties, purchasers of the property from the defendant, should be susceptible of determination by a specified procedure. In lieu of the harsh common law doctrine, a potential purchaser can now readily ascertain whether there is a claim affecting the property. As the Massachusetts Supreme Court commented, a notice of lis pendens "does nothing that a conscientious seller of property would not do as a matter of course." *Debral Realty*, 420 N.E.2d at 348. A standard New Jersey text states that it is customary practice in New Jersey for sellers to execute an affidavit of title "containing definite assertions as to ownership and encumbrances and statements as to other matters which might affect the title". Ackerson & Fulop, 21 *New Jersey Practice: Skills and Methods* § 2068, at 80 (2d ed. 1973). Even were this not the practice, we see no reason why the New Jersey legislature could not appropriately mandate some similar procedure to insure full disclosure of claims to all parties to a transfer of property. New Jersey's statute prevents later litigation between the plaintiff-claimant and the subsequent purchaser as to the extent of actual knowledge of the plaintiff's claim. The legislature's enactment of the lis pendens statute modifying common law reflects its attempt to reach a fair accommodation among the rights of all of the interested parties. As the New Jersey court stated in *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J.Super. at 497, 406 A.2d at 1340, "the notice of *lis pendens* exists for public policy reasons necessary for the proper administration of justice."

Next we must ascertain whether the New Jersey lis pendens provisions represent a proper accommodation of these competing interests, considering "the risk of an erroneous deprivation," "the probable value, if any, of additional or substitute procedural safeguards," and the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903. In light of the Supreme Court's decision in *Mitchell*, the New Jersey lis pendens statute is not constitutionally defective merely because it fails to provide for notice and opportunity to be heard prior to the filing of the notice of lis pendens. 416 U.S. at 611, 94 S.Ct. at 1902. The interests of the plaintiff and the state are served in preventing alienation of the property during the period between the filing of the lawsuit and such hearing. *See also Finberg*, 634 F.2d at 59.

Fedders contends that even if a pre-filing hearing is not required, the procedures are nonetheless inadequate because they do not provide for an "expeditious post-filing notice and hearing before a judicial officer to establish probable cause of the claim and of the fact that it truly affects an interest in realty rather than constituting a mere claim for damages." Fedders brief at 41. However, Fedders is not totally without protection against frivolous or unmeritorious claims. In the first place, the availability of a lis pendens is limited because a notice of lis pendens may be filed only when there is a pending action affecting title to real estate. N.J.Stat.Ann. § 2A:15–6. The filing of such a complaint is subject to both federal and state rules requiring that attorneys must certify that there are good grounds for the complaint. Fed.R.Civ.P. 11; N.J.R. 1:4–5, 1:4–8. Under the New Jersey statute, a lis pendens is not a general creditor's remedy to be used as security for unrelated claims, but it can be filed only when the complaint discloses an interest in the realty in question. Also, if the defendant posts sufficient security with the court

as a bond, the lis pendens will be lifted. N.J.Stat.Ann. § 2A:15–15. In upholding the sequestration procedure at issue in the *Mitchell* case, the Supreme Court specifically noted that among other procedural safeguards, the debtor was able to dissolve the writ of sequestration by posting a bond. 416 U.S. at 608, 94 S.Ct. at 1900. While the amount of the bond might make this protection ineffective when a destitute consumer debtor is involved, we cannot assume on this record that this provision does not give some effective remedy to a corporate property owner such as Fedders. The record shows that in an action instituted by Chrysler against Fedders and its wholly-owned subsidiary, Airtemp Corporation, in Kentucky, defendants in fact posted a bond of $11,900,000 to vacate a lis pendens filed in that state so as to enable them to sell the property on which Chrysler claimed a lien. App. at A161.

We also note that remedies of malicious prosecution and abuse of process are likely to be available in New Jersey to provide some protection against improper utilization of lis pendens. In *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405, 410–12 (1956), the California Supreme Court held that recordation of notice of lis pendens can be the basis for a malicious prosecution action. *See Houska v. Frederick,* 447 S.W.2d 514, 518–19 (Mo.1969) (same). In *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.,* the New Jersey court stated, albeit in dictum, that plaintiff "may be able to recover . . . in an action for malicious prosecution if the elements of that tort are satisfied." 170 N.J.Super. at 498, 406 A.2d at 1340 (citing *Albertson* and *Houska* ). The significance of such remedies is not merely in the possibility of recovery but in their deterrent effect.

Furthermore, the New Jersey statute provides for the discharge of the notice of lis pendens if the plaintiff fails to prosecute the underlying action "diligently" or "for other good cause shown." N.J.Stat.Ann. § 2A:15–10. Additionally, the defendant in federal court, such as Fedders, may move prior to trial to discharge the notice of lis pendens via a motion to dismiss the complaint for failure to state a claim or summary judgment. In both *O'Boyle v. Fairway Products, Inc.,* 169 N.J.Super. 165, 167, 404 A.2d 365, 366 (App.Div.1979) (per curiam), and *Polk v. Schwartz,* 166 N.J.Super. 292, 299–300, 399 A.2d 1001, 1005 (App.Div. 1979), the New Jersey courts suggested the interrelationship between a motion to discharge the Notice of Lis Pendens under the New Jersey statute and a motion to dismiss the complaint for failure to state a claim or for summary judgment under court rules. The former can be used when the complaint shows that the action is not one which supports a lis pendens in that the necessary relationship between the claim and the property is absent, the latter tests the merits of the claim itself. In upholding the Massachusetts lis pendens provision against a due process challenge that state's Supreme Court recently commented:

> To some extent, baseless lawsuits against the property owner may be quickly disposed of before trial by motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment. A disposition favorable to the property owner . . . results in the removal of any detrimental effects of the lis pendens procedure on contemplated transactions involving the property.

*Debral Realty,* 420 N.E.2d at 348 n.15 (citations omitted). Although we do not minimize the substantial burden which a defendant faces because a plaintiff, as the district court noted, can rather easily "clear the relatively low hurdles of motions to dismiss or summary judgment", 519 F.Supp. at 1263, we believe the district court failed to give adequate weight to the panoply of provisions available to the defendant which are designed to minimize the risk of erroneous deprivation.

Fedders argues that it is unlikely that summary judgment is an effective remedy in a case such as this which involves complex factual and legal issues. However, the "risk of an erroneous deprivation" must be considered together with "the probable value, if any, of additional or substitute procedural safeguards." *Mathews v. Eldridge,*

424 U.S. at 335, 96 S.Ct. at 903. If, as Fedders argues, it is unrealistic to rely on summary judgment as a factor which protects the defendant property owner from baseless claims arising in complex actions, then it is just as unrealistic to rely on its proposed substitute, "an expeditious post-filing hearing before a judicial officer to establish probable cause of the claim," because similar difficulties would inhere in making the "probable cause" determination, particularly before discovery proceedings have been undertaken. Fedders has suggested no other or more effective substitute for the procedure chosen by the New Jersey legislature.[8]

We keep before us the words of Chief Judge Seitz, writing for the en banc court in *Finberg*: "The weight to be accorded [the respective] interests depends upon the facts of a particular case." 634 F.2d at 58. The Supreme Court has recently described our inquiry into due process as an "uncertain enterprise" which seeks to "discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter v. Department of Social Services*, 452 U.S. 18, 24–25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981). We do not make light of the real detriment and inconvenience which a notice of lis pendens may cause a property owner under some circumstances. However, when we consider the nature of the deprivation, the extent of the deprivation, the interests of the parties, and the defendant's failure to suggest a meaningful remedy which would satisfy its particular complaint, we cannot say that New Jersey's lis pendens procedure fails to comport with "fundamental fairness."

For the foregoing reasons we will vacate the order of the district court entered July 10, 1981 declaring the New Jersey lis pendens statute to be unconstitutional, and remand for further proceedings consistent with this opinion.

## APPENDIX

### ARTICLE 2. LIS PENDENS

**2A:15–6. Written notice of pendency of action; contents**

In every action, instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or register of deeds and mortgages, as the case may be, of the county in which the affected real estate is situate, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.

No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only.

**2A:15–7. Effect of filed notice as to persons claiming under defendant in action**

From and after the filing of a notice of lis pendens, any person claiming title to,

---

**8.** In dictum in a recent opinion issued by the New Jersey Chancery Division, the court suggested that the constitutional defects which the district court in this case found inhered in the lis pendens procedure could be remedied by requiring that a plaintiff, such as Chrysler, who initiates an action to affect the title of real estate be required to apply for a court order authorizing the filing of a notice of lis pendens. *United Savings & Loan Ass'n v. Scruggs*, No. F 7483–80 (N.J.Ch.Div. Oct. 7, 1981). Under the suggested procedure which would be analogous to that applicable to a writ of attachment under New Jersey Rule 4:60–5(a), the plaintiff would be required to make a minimal showing that the claim warrants the degree of deprivation of property right that occurs when a notice of lis pendens is filed. · The court suggested that the New Jersey Civil Practice Committee consider the problem and recommend to the New Jersey Superior Court more permanent and binding procedures by way of rule amendment. In light of our conclusion that the New Jersey statutory procedure does not violate the Fourteenth Amendment of the United States Constitution, we express no view as to this proposal.

interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein as though he had been made a party thereto and duly served with process therein.

## 2A:15–8. Rights of bona fide purchasers, mortgagees or lienors before notice filed and prior to final judgment

Unless and until a notice of lis pendens is filed as herein provided, no action, as to which such notice is required, shall, before final judgment entered therein, be taken to be constructive notice to a bona fide purchaser or mortgagee of, or a person acquiring a lien on, the affected real estate.

## 2A:15–9. Notice of foreclosure action

In actions for the satisfaction or foreclosure of a duly recorded or registered mortgage or the foreclosure of a duly recorded certificate of tax sale, the notice of lis pendens shall, in addition to describing the affected real estate, specify the book and page of the record or registration of the mortgage or of the record of the certificate of tax sale, as the case may be. Such notice shall be filed, and the time of its filing and the time of the filing of the complaint with the name of the plaintiff and the first defendant named, shall, in lieu of any other indexing and recording, be noted in the margin of the record of the mortgage or of the record of the abstract thereof or in the margin of the record of the certificate of tax sale, as the case may be.

## 2A:15–10. Discharge of lis pendens of record when action not prosecuted

If plaintiff in an action as to which a notice of lis pendens has been filed as herein required fails to prosecute the same diligently, the court wherein the action is pending may, for such cause or for other good cause shown, by order direct the coun-

ty clerk or register of deeds and mortgages, as the case may be, to discharge the lis pendens of record.

## 2A:15–11. Life of lis pendens

No notice of lis pendens shall be effective after 3 years from the date of its filing.

## 2A:15–12. Record and index of notices; access to

Except as provided by section 2A:15–9 of this title, the county clerk or register of deeds and mortgages, with whom a notice of lis pendens is filed, shall forthwith record the same, with the time of the filing thereof, in a proper book provided and kept by him in his office. The record book shall be properly indexed, and shall be a public record, to which persons desiring to examine the same shall have access.

## 2A:15–13. Fee for recording notice as taxable costs

The fee for recording a notice of lis pendens shall be taxable as a part of the costs in the action.

## 2A:15–14. Marginal notation in record of notice of judgment for defendant; appeal; further lis pendens

Whenever a final judgment is made in favor of the defendant or defendants in any action, notice of the pendency of which has been filed in the office of any county clerk or register of deeds and mortgages, the county clerk or register of deeds and mortgages in whose office the notice has been filed shall, when a copy of such judgment, certified under the seal of the court in which the judgment shall have been obtained, is filed in his office, enter in the margin of the record of the notice a statement of the substance of the judgment. Thereafter the real estate described in the notice shall be discharged of all equities or claims set up in the complaint in the action, unless the plaintiff takes an appeal or institutes proceedings for relief from the judgment and files a similar notice of lis pendens in said

office, stating in the notice the object of the appeal or proceedings. Such notice shall, during the pendency of such appeal or proceedings, have the effect of the notice first filed, and the real estate described in the notice may be discharged of all equities set up in the complaint, in the manner provided for the discharge of the notice first filed.

### 2A:15–15. Order discharging real estate from claim

If, in an action for the enforcement against real estate of a claim for the payment of money, except for the foreclosure of a mortgage, as to which a notice of lis pendens has been filed, the defendant therein gives such sufficient security as the court having jurisdiction of the action shall direct, to pay such sum of money as may, by the final determination of the action, be ascertained to be chargeable upon the affected real estate, the court may by order discharge the real estate from such claim.

### 2A:15–16. Record of discharge of real estate from claim

Upon the filing of a copy of the order mentioned in section 2A:15–15 of this title, certified under the seal of the court out of which it issued, with the county clerk or register of deeds with whom the notice of lis pendens has been filed, that officer shall enter, on the margin of the record of the notice, a notation of the discharge of the real estate from the claim set up in the action.

Thereafter the real estate shall be discharged from the claim, except such as may be covered by the security given for the payment thereof.

### 2A:15–17. Discharge of lis pendens when judgment is paid, satisfied or action settled or abandoned

When a judgment made in an action, of the pendency of which notice has been filed as herein provided, is paid, satisfied or performed, or the action has been settled by the parties thereto or has been abandoned by plaintiff therein, a statement of such payment, satisfaction, performance, settle-

ment or abandonment shall be entered by the county clerk or register of deeds and mortgages in whose office the notice has been filed, upon the receipt and filing by him of a warrant for that purpose, executed by the party who filed the notice, or his attorney, as warrants to satisfy judgments are required to be executed.

If the judgment has been paid, satisfied or performed or the action has been settled or abandoned as aforesaid, but the party who filed the notice of lis pendens fails to file the warrant stated, the court having jurisdiction of the action may, upon being satisfied of the fact of such payment, satisfaction, performance, settlement or abandonment and upon such notice as it may by its order direct, order the real estate affected and described in the notice of lis pendens to be discharged of all claims or equities set up in the complaint in the action.

The county clerk or register of deeds and mortgages shall, upon the filing by him of the warrant mentioned in the first paragraph of this section or upon the filing by him of the original or a certified copy of the order mentioned in the second paragraph of this section, note in the margin of the record of the lis pendens notice the discharge thereof by the warrant or order.

Thereupon the real estate affected by the action and described in the notice shall be discharged of all claims or equities set up in the complaint in the action.

ADAMS, Circuit Judge, concurring:

I concur in the judgment reached by the Court today, namely, that the order declaring the New Jersey lis pendens statute to be unconstitutional should be reversed.

As the opinions by Judge Sloviter and Judge Hunter demonstrate, there are several routes by which one can arrive at this result. Although I recognize substantial merit in the position of Judge Hunter that there is no "taking" here, and that, in view of the statements of the United States Supreme Court in *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), it is at the very least arguable that

there is no state action as well, I am persuaded by the reasoning, set forth by Judge Sloviter, that the clearest ground for reversal is that the procedure under the New Jersey law is sufficient to satisfy any constitutional requirement of due process that may apply. Where several constitutional questions of equal priority are implicated and resolution of any one of them will lead to the same outcome, I believe it prudent to rest the decision on the ground that under present interpretation of the law is most free from doubt. Rather than reach out to address and decide constitutional questions that are more troublesome and less clearly governed by existing law, I join in the portion of the opinion by Judge Sloviter that holds that Fedders' due process rights were not violated by the filing of a lis pendens by Chrysler.

JAMES HUNTER, III, Circuit Judge, concurring:

In this appeal we are asked to examine the constitutionality of the New Jersey lis pendens statute.[1] The district court invalidated the statute as an unconstitutional deprivation of property rights by the state without due process of law. The majority has reversed that decision and has upheld the statute as complying with due process. I write separately because I do not believe that the appellees were deprived of a constitutionally protected right. While my view would not require reaching the question of state action, I discuss it because it was reached by the district court and by Judge Sloviter. I would find state action to be lacking in this case. I would not reach the due process analysis except to note my disagreement with the analysis of the district court. For the reasons that follow, I concur in the judgment of the majority reversing the decision of the district court.

A. *Whether the Lis Pendens Constitutes a "Taking."*

The history of the doctrine of lis pendens has been set forth in careful detail by Judge Sloviter. At common law, the filing of a suit affecting property imparted constructive notice of that suit to the whole world. A purchaser who acquired the property during the pendency of the action took subject to the outcome of the litigation. *See Haughwout & Pomeroy v. Murphy,* 22 N.J.Eq. 531, 544 (N.J.1871); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.,* 170 N.J.Super. 491, 496–97, 405 A.2d 1337, 1339–40 (Ch.Div.1979). Restrictions on the alienability of property, property which was the subject of litigation, arose from the filing of the suit itself.

The fiction of imputing knowledge of pending litigation to an innocent purchaser resulted in hardship and injustice. To remedy that problem, in 1902 the New Jersey legislature adopted the predecessor to its current lis pendens statute. The statute altered the common law by providing for the actual filing of a notice of lis pendens. N.J.Stat.Ann. § 2A:15–6 (West) (1952). As a result, a purchaser could easily determine whether the property was the subject of litigation. Even if he did not, the statute bound the purchaser to constructive knowledge of the lawsuit. N.J.Stat.Ann. § 2A:15–7 (West) (1952).

The enactment of the statute did not change the basic nature of the doctrine of lis pendens. Both before and after the statute was enacted, a purchaser of property took that property subject to the outcome of pending litigation. It remained the litigation, and not the notice, that prevented the unencumbered transfer of property. The statute eliminated the harshness that resulted from application of the common law doctrine of constructive notice.

Appellees concede that the lis pendens statute applies under the facts of this case. *See Polk v. Schwartz,* 166 N.J.Super. 292, 399 A.2d 1001 (App.Div.1979). In fact, the essence of appellees' contention is that the statute works too well and that its property has been taken. The basic inquiry then

---

1. N.J.Stat.Ann. § 2A:15–6 to 17 (West) (1952). The text of the statute is set forth in the Appendix to the majority opinion.

must be whether the statute acts to deprive appellees of a constitutionally protected right. If it does not, procedural due process guarantees are not implicated and our inquiry is ended.

Judge Sloviter's opinion fully explains the effect of the statute: the statute sets forth the required contents of the notice of the litigation;[2] it provides for constructive notice to the world of pending litigation;[3] it provides for the discharge of the notice of lis pendens if the underlying action is not prosecuted diligently;[4] it allows discharge of the lis pendens after the passage of three years;[5] it allows the court to discharge the notice if defendant posts sufficient security with the court;[6] and finally, it allows the discharge of a lis pendens when a judgment is entered for defendant,[7] a judgment for plaintiff is paid or settled, or the action is settled or abandoned.[8]

To me, however, the answer to the question before us (*i.e.*, whether there has been a deprivation of a constitutionally protected right) is best seen from an analysis of what the filing of the lis pendens *did not do* with respect to the Edison property. There was no deprivation of possession or of any manner of use or enjoyment of the realty. Profits earned from Fedders' operations remained in the exclusive possession of Fedders. Fedders was (and remains to this day) free to sell the property. In spite of this, the district court ruled that "the filing of a lis pendens is a taking of property," and that there had been a taking of "something of worth" since Fedders could not convey free of plaintiff's claims. 519 F.Supp. at 1260.

I disagree with the conclusion of the trial court that the lis pendens effected a taking. The fact is that if "something of worth" was taken, it was taken by the suit itself.

It is no doubt true that a prospective purchaser would be made cautious by the notice of lis pendens, but that purchaser would be no more cautious than if he had obtained notice of the Chrysler suit by any other means. *It is the underlying claim and not the notice that would make a buyer cautious.* The statute acts only to provide a means by which a potential purchaser can be assured of actual notice of a claim. Under the traditional doctrines of notice and bona fide purchaser, a buyer with notice of Chrysler's claim would—even without the lis pendens—take subject to the equities Chrysler asserts. *Wood v. Price,* 79 N.J.Eq. 620, 622, 81 A. 983, 984 (N.J.1911). The statute merely replaced the common law fiction of constructive notice with a more realistic means of ensuring actual notice. N.J.Stat.Ann. § 2A:15–8 (West) (1952).

Appellees ask this court to find that for all "practical" purposes, they cannot sell their property because of the lis pendens. In this regard they submit the affidavit of a title expert who states that during the pendency of a filed lis pendens, a title insurance company would not insure title without an exception for the claim of which the lis pendens is notice. Appellees' argument is not compelling. This is the same treatment afforded by title companies to easements, restrictive covenants and liens such as mortgages. The title company does not effect a "taking" by making these exceptions.[9]

Thus, if there is a taking at all in this case, it results not from the operation of the lis pendens statute, but from the doctrine that any purchaser with notice takes the property subject to the underlying claim. We must ask, then, whether Fedders has the right to convey its property clear of

2. N.J.Stat.Ann. § 2A:15–6 (West) (1952).

3. N.J.Stat.Ann. § 2A:15–7 (West) (1952).

4. N.J.Stat.Ann. § 2A:15–10 (West) (1952).

5. N.J.Stat.Ann. § 2A:15-11 (West) (1952).

6. N.J.Stat.Ann. § 2A:15 -15 (West) (1952).

7. N.J.Stat.Ann. § 2A:15-14 (West) (1952).

8. N.J.Stat.Ann. § 2A:15–17 (West) (1952).

9. I do not mean to suggest that there are no differences between these latter rights in property and a lis pendens. I state only that the exception of a lis pendens from a title insurance policy is neither an extraordinary event nor evidence of a taking.

Chrysler's claims. If such a right exists, and, as Fedders asserts, the pending litigation prevents it from exercising that right, then we would be compelled to hold that the mere institution of litigation constitutes a "taking" of "something of worth." A holding to that effect would be tantamount to stating that the owner of real estate has either a constitutional right not to be sued at all if the suit concerns real estate, or a constitutional right to sell that real estate as if there were no litigation, even though interests in the property were disputed and in the process of being adjudicated. No such rights exist. *See Wood v. Price*, 79 N.J.Eq. 620, 81 A. 983 (N.J.1911); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J.Super. 491, 406 A.2d 1337 (Ch.Div.1979).

Appellees do not ask us to go so far. They ask us only to strike the statute so that it can be modified by the legislature. Appellees contend that, as now worded, the statute gives plaintiffs unfair leverage: by filing a suit and a corresponding notice of lis pendens, plaintiffs can encumber a defendant's property for up to three years—virtually forcing a favorable settlement with the property owner.

Certainly appellees cannot claim that a *meritorious* suit gives a plaintiff unfair leverage. As discussed, a property owner has no right to be free from the burdens imposed by such a claim. To the extent that leverage is obtained by the filing of a meritorious suit, such leverage is not unfair. Indeed, meritorious claims have the natural and desirable effect of inducing settlements in all types of litigation.

If, on the other hand, the underlying claim is frivolous, the property owner has numerous adequate remedies. The statute allows a lis pendens to be discharged for failure to prosecute diligently, for good cause or by summary judgment. Further,

the property owner can remove the lis pendens by posting a bond or other security with the court. Finally, appellees have the right to sue for malicious prosecution and abuse of process.

This comprehensive scheme of protecting an individual's property rights has led most courts that have considered this issue to find that no "taking" results from the filing of a lis pendens. *See, e.g., Batey v. Digirolamo*, 418 F.Supp. 695 (D.Hawaii 1976); *Debral Realty, Inc. v. DiChiara*, 420 N.E.2d 343 (Mass.Sup.J.G.1981); *George v. Oakhurst Realty, Inc.*; 414 A.2d 471 (R.I.Sup.Ct. 1980); *Empfield v. Superior Court*, 33 Cal. App.3d 105, 108 Cal.Rptr. 375 (1973). Each of the statutes reviewed was essentially the same as the New Jersey statute. Appellees cite only one decision in which a state lis pendens statute was held unconstitutional. *Kukanskis v. Griffith*, 180 Conn. 501, 430 A.2d 21 (1980).[10] The Connecticut court in *Kukanskis* and the district court in this case followed the line of cases beginning with *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and including *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Each of these cases involved the complete deprivation of a property owner's use and possession of personal property. There is no such deprivation here. Reliance on these cases is therefore inappropriate.

Appellees' reliance on a line of cases holding non-possessory prejudgment real estate attachments unconstitutional is similarly misplaced. In *Winpenny v. Krotow*, 574 F.2d 176 (3d Cir. 1978), we ruled that the Pennsylvania Municipal Claims and Tax Liens Act, which permitted a municipality to create a lien on an individual's property by filing a claim without a prefiling hear-

---

**10.** Appellees also cite *Lake Tulloch Corp. v. Dingman*, No. WEL 27140 (Cal.Super.Ct., L.A. Co., June 1, 1973), *aff'd sub nom. Dingman v. Superior Court*, 2 Civ. 42127 (Cal.Ct.App., 2d Dist., July 17, 1973). While the Superior Court in *Dingman* held the California lis pendens statute to be violative of the Fourteenth Amend-

ment, the Appellate Division affirmed without commenting on the constitutional issue involved therein. It should be noted that the California statute was upheld as constitutional in *Empfield v. Superior Court*, 33 Cal.App.3d 105, 108 Cal.Rptr. 375 (1973).

ing, is not unconstitutional,[11] contrary to *Terranova v. Avco Financial Services of Barre, Inc.,* 396 F.Supp. 1402 (D.Vt.1975) (prejudgment real estate attachment unconstitutional as violative of due process). Even assuming that we would not follow *Winpenny,* the non-possessory real estate attachment cases are inapplicable to the issue before us. In each of the cases cited by appellees,[12] the attachment acted to create a right in property which did not previously exist, whereas a lis pendens creates no rights in property.

The decision in *Spielman-Fond, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz. 1973) (three-judge court) (per curiam), *aff'd mem.,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), provides clear support for the view that there was no deprivation here. In *Spielman-Fond,* a mechanic's lien, which left the property owner with the use, possession and ability to alienate the realty, was held not to take or deprive the owner of its property. Appellees contend that, because a mechanic's lien is based upon an implied underlying agreement between the parties, *Spielman-Fond* is distinguishable from the instant case. Appellees can cite no case involving real estate which has distinguished *Spielman-Fond* on these grounds. Further, our holding in *Winpenny,* and the Ninth Circuit's holding in *In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976),[13] undercut any such distinction. The non-possessory real estate attachment cases cited by appellees are inapposite for the reasons discussed above.

The operation of the lis pendens statute in this case has taken nothing from Fedders other than the ability to convey its property free from the claims asserted by Chrysler—something it has no right to do. As I

conclude that there has been no taking, I would reverse. As it is not necessary for me to discuss state action and due process, I would avoid the consideration of those constitutional questions. *See Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 94 (3d Cir. 1979) (en banc), *rev'd on other grounds,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

**B. Whether There is State Action.**

The district court, without discussion, referred to "the state action of the county clerk filing the notice of lis pendens." 519 F.Supp. at 1260. Judge Sloviter has analyzed this issue and found that state action exists. I disagree.

In *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the Supreme Court held that state action does not exist by virtue of a state statute which permits a warehouseman to enforce a lien for storage charges by a sale of the stored goods. The adoption of a system of rights and remedies does not in and of itself constitute state action. The Supreme Court distinguished the line of cases dealing with state action under creditor-remedy statutes on the ground that the facts in *Flagg Bros.* showed a lack of "overt official involvement." 436 U.S. at 157, 98 S.Ct. at 1734. The Court went on to say:

This situation is clearly distinguishable from cases such as *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 [95 S.Ct. 719, 42 L.Ed.2d 751] (1975); *Fuentes v. Shevin,* 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969). In each of those cases a *government official participated in the physical deprivation of*

---

**11.** In addition, *see In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), cert. denied, 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976) (prejudgment attachment of real estate which did not deprive the property owner of use or possession was not unconstitutional).

**12.** In addition to those cases which have been noted in the majority's opinion, appellee cites *Briere v. Agway, Inc.,* 425 F.Supp. 654 (D.Vt. 1977), and *United States General, Inc. v. Arndt,* 417 F.Supp. 1300 (E.D.Wis.1976) (three-judge court).

**13.** *See* note 11 *supra.*

what had concededly been the constitutional plaintiff's property under state law before the deprivation occurred. *The constitutional protection attaches not because,* as in *North Georgia Finishing,* a *clerk issued a ministerial writ* out of the court, *but because as a result of that writ the property of the debtor was seized and impounded by the affirmative command of the law of Georgia.* The creditor in *North Georgia Finishing* had not simply sought to pursue the collection of his debt by private means permissible under Georgia law; he had invoked the authority of the Georgia court, which in turn had *ordered* the garnishee not to pay over money which previously had been the property of the debtor. See *Virginia v. Rives,* 100 U.S. 313, 318 [25 L.Ed. 667] (1880); *Shelley v. Kraemer,* 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161] (1948).

436 U.S. at 160–61 n.10, 98 S.Ct. at 1735–36 n.10 (emphasis added).

In this case, the county clerk took the notice of lis pendens and filed it, in accordance with the statute. The clerk exercised no discretion; the filing of the notice was, as in *Flagg Bros.,* a purely ministerial act. I see no difference between the extent of state involvement here and that which we found insufficient for purposes of state action in *Gibbs v. Titelman,* 502 F.2d 1107 (3d Cir.), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). There, the ministerial acts of the clerk involved the issuance of a certificate of ownership. We held that such minimal involvement by the state does not transform an essentially private transaction into a state action. This position was reaffirmed in *Parks v. "Mr. Ford",* 556 F.2d 132, 141 (3d Cir. 1977) (en banc).

The filing of the lis pendens creates no substantive rights in any party; therefore, no rights are created or denied by the actions of the clerk. In fact, neither the lis pendens statute nor any other law compels the filing of the lis pendens. Filing is not a prerequisite to the institution or mainte-

nance of the suit. The powers of the sovereign are not invoked, nor is its authority used to affect property rights. The action remains private, not public; it involves only private parties and privately owned realty. The state merely acquiesces. As the Supreme Court stated in *Flagg Bros.,* "[t]his court . . . has never held that a State's mere acquiescence in a private action converts that action into that of the State." 436 U.S. at 164, 98 S.Ct. at 1737.

For these reasons I would find no state action present here. To me, neither the enactment of the statute nor the filing of the lis pendens by the county clerk implicates the procedural due process guarantees upon which the decision of the majority rests.

C. *Whether the Procedure Under the New Jersey Lis Pendens Statute Complies with Due Process.*

I agree with the views set forth in the majority opinion to the extent that they do not contradict the analysis I have set forth above regarding the lack of a deprivation of a constitutionally protected right. If it were necessary to reach the issue, I would hold that the New Jersey lis pendens statute comports with the due process guarantees of the Fourteenth Amendment.

For the foregoing reasons, I concur in the judgment rendered by the majority, reversing the decision of the district court and holding the New Jersey lis pendens statute to be constitutional.